GUYNETTA TYLER v. WELLS THOMPSON.

CLAIMS OF NON-RESIDENTS AGAINST ESTATES.—A non-resident cred-
itor residing in one of the United States is entitled to participate
with resident creditors in the assets of an insolvent estate in Texas,
according to the rank and classification of the claim, in the absence
of evidence of any payment on such claim from assets elsewhere.  On
such evidence such claim will be postponed until resident creditors
have received their *pro rata* equal to such payment.

APPEAL from Colorado.   Tried below before the Hon. Livingston Lindsay.

*George Quinan,* for appellant.

IRELAND, ASSOCIATE JUSTICE.—The facts in this case, as agreed to, are as follows :

"The plaintiff is a citizen of Virginia.

"R. H. Foot lived and died in Virginia.   His principal estate was in Colorado county, Texas, and administration was taken out there on his estate.

"Wells Thompson is the administrator.

"Plaintiff obtained judgment upon her claim, as stated in the petition, in the District Court of Colorado county, on the 22d February, 1871, for the amount therein alleged, and the same was by the judge ranked as a claim of the seventh class.

32

The estate of Foot is insolvent.   There are claims against
the estate originating in Texas and owned by citizens of
Colorado county.   The claim of plaintiff originated in Vir-
ginia.   The administrator has a large amount of funds in
his hands, amounting to about 70 per cent. of the whole
indebtedness of the estate.   He refused to pay the plaintiff
or the Virginia creditors of said estate who have proved
their claims here till the resident Texas creditors are paid
in full.''

The cause was submitted to the court below on this state-
ment of facts, and the judgment was for the administrator,
and the creditor appealed.

There is no appearance here for appellee.

The authorities on the question raised by the facts in this
case are by no means uniform or very satisfactory.

The common law that became a rule of action on the ques-
tion, and that had its origin with States wholly foreign to
and independent of each other, and where there was less
reciprocity and a lower degree of comity observed between
independent States than at the present day, has been vari-
ously ruled, and adhered to and modified according to the
views entertained by each of their obligations to a neighbor-
ing State.   One of the leading cases on the subject in this
country is that of Richards *v.* Harvey, 1 Mason R.

That opinion, delivered by Judge Story, has been seri-
ously questioned in a very lengthy and labored opinion by
Judge Cranch.   (Union Bank *v.* Smith, 4 Cr. C. C., 21.)

The elaborate discussion in Harvey *v.* Richards has occa-
sioned some confusion.   The question in that case was be-
tween distributees, and the rights of creditors were in no
way involved; and all that is there said about creditors
of insolvent estates is *obiter*, and is so treated by Judge
Cranch.   Wharton and Story, in their Conflict of Laws,
do not agree.

The doctrine of this case grew up and had its origin
among States holding no political relationship with each

other, except so far as was established by treaty. The fact that the States of the Union have a common agency for some purposes does not change the rule. On this question Virginia and Texas are sovereign and independent. (Hill *v.* Tucker, 13 How., 458 ; Hill *v.* Meek, 18 How., 16.) The political department of this State has not seen proper to adopt any rule on the subject. The only statute to be found in our books touching the rights of non-residents or undertaking to lay down a rule of comity is the act of 13th of February, 1854, extending to aliens such rights as are or may be accorded to American citizens by the laws of the nation to which such alien may belong. We find the question left in doubt, and the State, through her law-making department, not having taken action, and being therefore at liberty to adopt such rule as may seem consonant with our views of equity and that spirit of comity which seems to harmonize with the enlightened spirit of the age, we cannot agree with his honor, the district judge, who tried the case below.

Certainly if it had been shown that the Virginia creditor had received anything on the claim, either in Virginia or elsewhere, equity would postpone such creditor here, until others were made equal, or had been paid *pro rata* to the same extent. The language of the statement of facts seems to indicate that there was some estate in Virginia, but to what extent and whether appellant is justly chargeable with anything is not shown. Appellant is therefore entitled to participate in the assets in the hands of the administrator here, according to the rank and classification of her claim.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.