## JULIA D. RAMSAY et al.

### v.

## E. P. RAMSAY, Admr.

*Opinion filed April 16, 1902.*

1. EXECUTORS AND ADMINISTRATORS—*general policy of the law concerning administration.* It is the general policy of the law that all the property of a deceased insolvent debtor not set apart for the widow and minor children shall become assets in the hands of the administrator for the payment, *pro rata,* of all his debts according to classification, no matter where the assets may be found or the creditors reside.

2. SAME—*when superior diligence by creditor confers no advantage.* Under the laws of Missouri providing that "if a person dies insolvent, his estate found in this State shall, as far as practicable, be so disposed of that all his creditors, here or elsewhere, may receive an equal share in proportion to their respective debts," creditors of an insolvent dying in Illinois can acquire no superior rights over other creditors of the same class by procuring administration upon the insolvent's property in Missouri and filing their claims there.

3. SAME—*administration in domicile of deceased is the principal administration.* Upon the death of a person intestate, leaving assets in different States, the administration in the domicile of the deceased is the principal administration through which, in contemplation of law, assets are to be distributed in payment of debts, while the administrations in other States are ancillary, and are granted in order to reduce the assets in such States to money.

4. SAME—*the duties and powers of ancillary administrators.* In the absence of a statutory provision it is the duty of an ancillary administrator to collect the assets and reduce them to money and transmit the same to the principal administrator, although he may, under certain circumstances, pay claims probated there and transmit the balance to the principal administrator; but if the estate is insolvent the ancillary administrator has no right to pay resident claimants, or persons who have filed their claims there, more than their *pro rata share of the whole estate.*

5. SAME—*when distribution of assets is proper.* If certain creditors of an insolvent dying in Illinois file their claims in the ancillary administration in Missouri and the assets there are divided among them *pro rata,* it is proper for the court, in ordering distribution in Illinois among creditors of the same class, to direct that the creditors of such class who did not share in the Missouri assets be paid the same per cent received by the others from the Missouri assets, before distributing the remainder *pro rata* among all.

*Ramsay* v. *Ramsay,* 97 Ill. App. 270, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on writ of error to the Circuit Court of Clinton county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

Rufus N. Ramsay died on November 11, 1894, residing in Clinton county, this State. His son, E. P. Ramsay, was appointed administrator by the county court of that county on the 17th of said month. A large number of claims were presented and allowed against the estate, aggregating $183,854.70. Among those claims was one in favor of Julia D. Ramsay, the widow of Rufus N., for $18,931.72, and another in favor of G. VanHoorebeke for $2020.42. Decedent owned a large amount of real and personal property in this State and also one city lot in St. Louis, Missouri. On the 8th of March, 1895, an administrator was appointed by the probate court of St. Louis in conformity with the laws of that State, it being there provided by statute that a non-resident of the State of Missouri could not administer upon an estate there. The claims of Mrs. Ramsay and VanHoorebeke were probated and allowed in the St. Louis county court, and through a proceeding by the administrator there to sell real estate to pay debts Mrs. Ramsay received $2561.51 and VanHoorebeke $278.03, being a *pro rata* payment of 12.44 per cent upon their respective claims. At the time that order of distribution was entered, appellee, the resident administrator, appeared in the St. Louis probate court and asked that the money in the hands of the administrator there be transmitted to him for distribution under direction of the probate court of Clinton county, but the request was denied. On the 25th of June, 1900, he presented a partial settlement of his administration to the probate court of Clinton county, charging himself with the two items paid to appellants in Missouri and taking credit for the same as having been paid upon their claims. This report showed the assets of the estate on that date,

including said claims, amounted to $131,810.42, and that the total liabilities of the estate to seventh-class claimants, including those of appellants, amounted to $183,854.70. On this report he asked for an order of distribution. Appellants appeared and filed objections, but the court ordered the administrator to pay fifty cents on the dollar upon all claims of the seventh class except those of the appellants, as to which he was directed to deduct the amounts received from the Missouri administrator and pay them fifty cents on the dollar upon the remainder of their claims. From that order they took separate appeals to the circuit court of Clinton county, where, by stipulation, they were consolidated and heard on an agreed statement of facts. The circuit court modified the order of the county court, and directed the appellee to pay all claimants, except appellants, 12.44 per cent on their claims, being the amount which they had already received, thus making all other claimants equal with them, and to then distribute the balance in his hands ratably among all claimants of the seventh class. Upon writ of error from the Appellate Court for the Fourth District the judgment of the circuit court was affirmed. From that judgment of affirmance this appeal is prosecuted.

It is admitted by all parties that the estate of Rufus N. Ramsay is insolvent, taking into consideration the assets in all jurisdictions. It was also stipulated that certain sections of the statutes of Missouri were in force at the time of the foregoing administration, being in the Revised Statutes of that State for the year 1889, to-wit:

"Sec. 128. That all claims shall be classified, those allowed within one year from the grant of letters to be of the fifth class and those allowed after one year and within two years to be of the sixth class."

"Sec. 261. When administration is taken in this State on the estate of any person who at the time of his death was an inhabitant of any other State or country, his real

estate found here, after the payment of his debts, shall
be disposed of according to his last will, if he left any.
* * * If there be no such will, his real estate shall
descend according to the laws of this State. His per-
sonal estate shall be disposed of according to the laws
of the domicile.

"Sec. 262. Upon final settlement, after the payment of
all debts for which the same is liable in this State, the
residue of the personal estate, if any, may be distributed
and disposed of in the manner aforesaid by the court in
which the estate is settled, or it may be transmitted to
the administrator of the domicile of the deceased, as the
court thinks best.

"Sec. 263. If a person dies insolvent, his estate found
in this State shall, as far as practicable, be so disposed
of that all his creditors, here and elsewhere, may receive
an equal share in proportion to their respective debts.

"Sec. 264. To this end the estate shall not be trans-
mitted to the foreign administrator until his creditors
who are citizens of this State shall have received their
just proportion that would be due them if the whole es-
tate, wherever found, were divided among all of said
creditors in proportion to their respective debts, without
preferring any species of debt to another.

"Sec. 265. No creditor not being a citizen of this State
shall be paid out of the assets found here until those
who are citizens shall have received their just propor-
tion, as provided in the preceding section.

"Sec. 267. No one shall receive more than would be
due him if the whole estate were divided ratably among
all creditors who shall have duly proven their claims in
the court having jurisdiction thereof in this State.

"Sec. 268. The balance, if any, may be transmitted to
the foreign executor or administrator, or if there be none,
it shall in three years be distributed ratably among all
creditors," etc.

G. VanHoorebeke, *pro se*, and S. P. Bond, for appellant Julia D. Ramsay:

The moneys arising from the sale of real estate in Missouri are not assets in the hands of the administrator in Illinois, and he, therefore, had no right to take credit for the moneys paid to Mrs. Ramsay and Mr. VanHoorebeke by order of the probate court of St. Louis. Story on Conflict of Laws, 523; *Peck* v. *Mead*, 2 Wend. 471; *Hooker* v. *Olmstead*, 6 Pick. 481; *Goodwin* v. *Jones*, 3 Mass. 513.

The liability of lands of a decedent to pay debts depends upon the statutory provisions in relation thereto, and such statute laws must be followed. *Springfield* v. *Hurt*, 15 Fed. Rep. 307; *French* v. *Shatton*, 79 Mo. 506; *Bauer* v. *Gray*, 18 Mo. App. 173; *Johnson* v. *Holliday*, 68 Ga. 81.

The creditors proving their claims during the first year of administration in Missouri established a prior lien to all other creditors who proved their claims the second year and to those who failed to prove up their claims in Missouri. *Vansyckle* v. *Richardson*, 13 Ill. 171; *Myer* v. *McDougal*, 47 id. 278.

If the assets of a debtor are insufficient to satisfy all his debts, a creditor has a right to resort to the fund open to himself, and is not precluded from claiming from the funds of the estate, which are open to all creditors, a dividend on the full amount of his debt. He is not limited merely to a dividend on the balance, but the total received by him cannot exceed the sum due. *Mores* v. *Raulet*, 2 N. H. 488; *Miller* v. *Estate*, 82 Pa. 113; *Logan* v. *Anderson*, 18 B. Mon. 144; *Furness* v. *Bank*, 147 Ill. 570; *Levy* v. *Bank*, 158 id. 88; *First Nat. Bank* v. *Bank*, 151 id. 308; *Trust Co.* v. *Stewart*, 65 Ill. App. 391.

Appellants, by virtue of the laws of Missouri and by reason of their diligence in filing their claims within the first year of administration, became preferred creditors of the fifth class and entitled to priority of payment. Rev. Stat. of Mo. 1889, sec. 128.

This remedy was open to all of Ramsay's creditors, of which they might have availed themselves and have had their claims placed in the same class, but having failed to do so, by their *laches* were precluded from participating in the 12.44 per cent awarded to appellants under the laws of Missouri and the order of the probate court of St. Louis. Rev. Stat. of Mo. 1889, sec. 128.

The administration of an estate is governed, as to creditors, by the law of the place where the representative acts and was appointed, and therefore all questions as to priority of debts, the method of proving them, etc., must be determined by the law of the place where the administration is had, without regard to the domicile of the decedent or of the creditors, or the *lex loci contractus.* The law of place where the administrator acts governs as to the payment of debts. *Party* v. *Lortorch,* 54 Miss. 66; *Carroll* v. *McPike,* 52 id. 569; *Jones* v. *Drewery,* 72 Ala. 311; Rev. Stat. of Mo. 1889, sec. 261; 1 Woerner on Am. Law of Administration, (2d ed.) sec. 168; *Smith* v. *Bank,* 5 Pet. 513; *McElmoyle* v. *Pohn,* 13 id. 312.

M. P. MURRAY, for appellee:

The assets of the estate of Ramsay in the State of Missouri were legal assets, as distinguished from equitable assets. Story's Eq. Jur. sec. 551.

Where real estate of a decedent is sold to pay debts, when it is converted into money it is personal estate in the hands of the administrator for the payment of debts. It is only the surplus for distribution to the heirs which is to be distributed as real estate. *Lovegrove* v. *Cooper,* 2 Sm. & Griff. 271.

An insolvent estate of a non-resident of Missouri administered there must be so disposed of that all the creditors in Missouri and elsewhere may receive a share in proportion to their respective debts, and no one shall receive more than would be due him if the whole estate were divided ratably among all creditors who have duly

proved their claims. On this being done, the remainder of the estate is to be transmitted to the principal administration. Rev. Stat. of Mo. secs. 263-268.

Where there are administrations of the estate of a decedent in different jurisdictions, the administration of the domicile is the principal administration, and the others, whether ancillary or independent, are necessarily auxiliary administrations. *Young* v. *Wittenmyre*, 123 Ill. 307.

The rights, privileges, priorities, liens and preferences in respect to the legal assets of an insolvent estate are precisely those which exist at the moment of the decedent's death, and not other or different. These may be lost by neglect, but no creditor can by any process of administration gain any advantage over other creditors of the same class who proved their claims. *Scott* v. *Ware*, 74 Ala. 182; 1 Daniel's Ch. Pr. (5th ed.) sec. 236; 5 Ency. of Pl. & Pr. 609-612.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

It is insisted by appellants that they are entitled to receive full distributive shares of the assets reported by the administrator to the probate court of Clinton county without in any way being charged with the amounts received from the Missouri assets. The proposition is so manifestly unjust to other creditors of the insolvent estate that it should be sustained only in obedience to strict and imperative requirements of the law. The general policy of the law in all jurisdictions, so far as we are aware, is, that all the property of a deceased insolvent debtor not set apart for the widow or minor children shall become assets in the hands of his administrator for the payment, *pro rata*, of all his debts according to classification, no matter where the assets may be found or the creditors reside. In *Dawes* v. *Head*, 3 Pick. 128, it was said by Parker, Judge: "We cannot think that in any civilized country advantage ought to be taken of the accidental

circumstances of property being found within its territory which may be reduced to possession by the aid of its courts and law, to sequester the whole for the use of its own subjects or citizens, and where it shall be known that all the estate and effects of the deceased are insufficient to pay his just debts. Such a doctrine would be derogatory to the character of any government." The above quoted sections 263 and 264 of the Missouri statute, as well as other sections of that statute, clearly recognize this just and equitable rule. Our statute provides, that "when the estate is insufficient to pay the whole of the demands, the demands in any one class shall be paid *pro rata*, whether the same are due by judgment, writing obligatory or otherwise, except as otherwise provided." (1 Starr & Cur. chap. 3, sec. 71.) Unless, therefore, appellants have shown that their claims are in some way exceptions to the general rule, the judgment of the circuit court is right and should be affirmed.

It seems to be thought by appellants' counsel that they are entitled to a preference over other creditors, as to the Missouri assets, on the principle that in the settlement of insolvent estates a creditor shall be allowed to prove his whole debt without regard to any collateral security he may hold, and be entitled to a dividend on the whole claim so allowed,—citing *Furness* v. *Union Nat. Bank,* 147 Ill. 570, *First Nat. Bank of Peoria* v. *Commercial Nat. Bank,* 151 id. 308, *Levy* v. *Chicago Nat. Bank,* 158 id. 88, and cases from other jurisdictions holding the same rule. No argument seems necessary to show that the doctrine of these cases can have no application to the question at issue. How can it be said that the Missouri property was in any sense a collateral security for appellants' claims, or that it was a fund open to them for the payment of their debts rather than those of all other creditors? At the time of the death of Ramsay he owned the property free from any lien whatever in their favor, and it was liable for the payment of all his debts.

It is further contended that appellants are entitled to a preference over other creditors in that property because of some superior diligence on their part. No reason or authority is cited in support of this contention, and none, we think, can be   It was undoubtedly the right of all the creditors of Rufus N. Ramsay to have the Missouri estate, as well as his Illinois property, converted into money and applied in payment of his debts, and it was the duty of the resident administrator to see that that purpose was accomplished. Being a non-resident of the State of Missouri, and therefore disqualified by the statute of that State from taking letters of administration himself, it was his duty to procure administration in the name of a resident. It was undoubtedly also the privilege of any creditor to cause such administration. It was also proper for Illinois creditors to file their claims and have them allowed in the probate court of St. Louis and to cause the real estate there to be sold for the payment of the debts of Rufus N. Ramsay, but not for the payment of the claims probated there, alone, because by the express provisions of the statute of that State, the estate being insolvent, the property found in Missouri was to be so disposed of that all his creditors there and elsewhere should receive an equal share, in proportion to their respective debts. There was no occasion for diligence upon the part of creditors in filing their claims there. They each had a right to rely upon the Missouri statute for protection against the claim now made by appellants.

Upon the death of a person intestate, leaving assets in different States or countries, the administration in the domicile of the deceased is the principal administration through which, in contemplation of law, assets are to be distributed in payment of his debts. (*Young* v. *Wittenmyre*, 123 Ill. 303.) Administration in other States or jurisdictions must be held in order to collect the debts and reduce the assets into money, which are known as

ancillary or auxiliary administrations. In the absence of statutory provision it is the duty of the auxiliary administrators to collect the assets, reduce them to money and transmit them to the principal administrator, or they may, under certain circumstances, pay claims probated there, transmitting only what remains in their hands to the principal administrator. Where, however, the estate is insolvent, it has been held, and we think with reason and justice, that the auxiliary administrator has no right to pay resident claimants, or those who have filed their claims there, more than their *pro rata* share of the whole estate. (*Dawes* v. *Head, supra; Davis* v. *Easty,* 8 Pick. 475; *Minor* v. *Austin,* 45 Iowa, 221; 2 Kent's Com. 434.) Manifestly, under section 263 of the Missouri statute, the administrator there had no right to pay these appellants more than their proportionate part of the whole assets, taking into account all seventh-class "creditors there and elsewhere," even though the property in that State had sold for enough to pay them in full, and, as we have said, every "creditor there or elsewhere" had a right to rely upon his performing his duty under that statute. He might have complied with the request of appellee, and after paying the small claims of resident creditors transmitted the balance of the fund in his hands for distribution. However, his refusal to do so, and the refusal of the St. Louis probate court to order him to do so, did not render it impracticable to still give effect to said section 263 and the provisions of our own statute, above quoted.

It is to be observed that these appellants are not content with what the Missouri court gave them, but come into the probate court of Clinton county and demand that they shall be allowed to participate in the assets in the hands of the appellee, the resident administrator. Having done so, we entertain no doubt that the latter court had the power, and that it was its duty, to require them to account for that which they had received under the

Missouri administration, and to order a distribution *pro rata* among all the seventh-class creditors.

The judgment of the circuit court to that effect was right, and was properly affirmed by the Appellate Court.

*Judgment affirmed.*