In the Matter of the Estate of LIBERTUS VAN BOKKELEN, Deceased.*

Surrogate's Court, New York County, March 19, 1935.

*Howard V. Miller*, for D'Arcy Van Bokkelen, administrator.

*Joseph S. Johnston* [*Henry Silverman* of counsel], for Walter Van Bokkelen, as first temporary administrator and another.

*George L. Livingston*, for the United States Fidelity and Guaranty Company.

*Paul E. Meade* [*William A. Onderdonk* and *G. E. Van Saun* of counsel], for the Irving Trust Company.

*Weissberger & Leichter* [*M. N. Leichter* of counsel], for the Barrett Company.

* See, also, 140 Misc. 365.

*O'Connell & Butler [Richard H. Burke* of counsel], for Fred C. Strype.

*Neil P. Cullom* and *Henry W. Steingarten,* for Grace E. Lowendahl.

*Paterson, Eagle, Greenough & Day [Carroll G. Walter* of counsel], for Charles Auguste and others.

*Davis, Polk, Wardwell, Gardiner & Reed [Edward C. McLean* of counsel], for the Royal Baking Powder Company.

*Zabriskie, Sage, Gray & Todd [Melber Chambers* of counsel], for the Royal Bank of Canada.

*Harry Weinberger,* for the Independent Fruit Auction Corporation.

FOLEY, S. The principal question involved in this contested accounting proceeding is the dispute between the foreign and domestic creditors of the decedent as to their respective rights to the payment of their claims out of the assets of the estate in this jurisdiction. The estate is insolvent. The domestic creditors contend that they are entitled to be preferred and to full payment of their claims before any sums are paid to the foreign creditors. The latter, on the other hand, claim that the surrogate should direct a *pro rata* distribution of the available assets in payment of both the foreign and domestic claims without distinction or priority.

At the outset, I hold that although original administration was granted in New York, it is in its nature ancillary and will be treated accordingly. The decedent at the time of his death was domiciled in Buenos Aires. " Although letters may purport to be principal or original in their form, the foreign domicile of the decedent of the estate establishes that they are actually ancillary." (*Matter of Worch,* 124 Misc. 380, citing 1 Twyeffort's New York Estates and Surrogates [2d ed.], p. 184; *Baldwin* v. *Rice,* 100 App. Div. 241; affd., 183 N. Y. 55.)

The general rules applicable to ancillary administration have been fixed by statute and decision. The primary purpose of such administration, from the standpoint of the ancillary State, is the protection of its resident creditors. Where the estate is solvent, after the payment in full of local debts of the decedent, the usual course is to transmit the surplus to the domiciliary State. In extraordinary cases, where there are no creditors in the domiciliary jurisdiction or elsewhere, it is within the discretion of the Surrogate's Court in this State to direct distribution of the surplus to the next of kin or legatees here and elsewhere. (*Matter of Hughes,* 95 N. Y. 55; Surr. Ct. Act, § 165.) The question is not a jurisdictional question, but one of judicial discretion. (*Matter of Hughes, supra.*)

Where the estate of the decedent is shown to be insolvent, a different rule of administration and of distribution is applied. In

such case the domestic creditor of a foreign decedent is treated in the ancillary distribution here, in exactly the same manner as is the domestic creditor of an insolvent domestic estate. A *pro rata* distribution is to be made to all the recognized domestic creditors upon an equal basis with the foreign creditors. There are, however, certain elements of discretion left with the surrogate even in insolvent estates in ancillary administration. Thus, the surplus, after the *pro rata* distribution to the domestic creditors, may, in the discretion of the court, be transmitted to the domiciliary jurisdiction, instead of making distribution direct to the foreign creditors. It is also within the discretion of the court to refuse to hear and determine, either in a proceeding or in an action, the claim of a foreign creditor against the ancillary representative in New York. (*Wedemann* v. *United States Trust Company*, 258 N. Y. 315; *Matter of Meyer*, 244 id. 598, affg. 216 App. Div. 735, affg. 125 Misc. 361.)

It is also in the discretion of the court to provide for direct payment to foreign creditors out of the ancillary funds in this jurisdiction, under the same rule of proportionate distribution as is applied to domestic creditors. Whatever discretion may exist in the courts as to the recognition of the rights of foreign creditors or the right to direct payment to them by a decree of our court, there does not appear to be any doubt under the language of section 165 of the Surrogate's Court Act as to the method of computing the proportionate payments to be made to domestic creditors. That method is fixed by the terms of the section by requiring the ascertainment of all the distributable assets located in this jurisdiction and elsewhere. The total of the established debts wherever located is next to be found. Distribution is then to be made in the ratio of assets wherever situated, to debts wherever existent. While the general rule as to the rights of domestic creditors has been stated in numerous decisions, there is a remarkable dearth of recent decisions dealing directly with the question of distribution in this State. It appears that in only one case in New York — *Lawrence* v. *Elmendorf* (5 Barb. 73, decided in 1848) — was the exact question determined. In *dicta* in other decisions, the rule of distribution has been generally stated. (*Helme* v. *Buckelew*, 229 N. Y. 363; *Bostwick* v. *Carr*, 165 App. Div. 55; *Matter of Worch*, 124 Misc. 380; *Matter of Van Zandt*, 142 id. 663.) Many States in this country have followed this rule of comity and equality of treatment of domestic and foreign creditors of a decedent in insolvent estates since the early case of *Dawes* v. *Head* (3 Pick. 128 [Mass. 1825]); *Goodall* v. *Marshall* (11 N. H. 88); *Tyler* v. *Thompson* (44 Tex. 497); *Ramsay* v. *Ramsay* (196 Ill. 179; 63 N. E. 618); *Dow* v. *Lillie* (26 N. D. 512; 144 N. W. 1082); *Estate of Hanreddy* (176 Wis. 570; 186 N. W. 744).

The underlying reason for this policy is sound. It is based upon the principle of honesty and the rule of marshalling of funds encouraged by equity. In the Massachusetts case of *Daws* v. *Head* (*supra*) the court said: " In regard to effects thus collected within our jurisdiction, belonging to an insolvent estate of a deceased person having his domicile abroad, the question may be more difficult. We cannot think, however, that in any civilized country advantage ought to be taken of the accidental circumstance of property being found within its territory, which may be reduced to possession by the aid of its courts and laws, to sequester the whole for the use of its own subjects or citizens, where it shall be known that all the estate and effects of the deceased are insufficient to pay his just debts. Such a doctrine would be derogatory to the character of any government."

The court further pointed out: " The proper course would undoubtedly be, to retain the funds here for a *pro rata* distribution according to the laws of our state among the citizens thereof, having regard to all the assets either in the hands of the principal administrator or of the administrator here, and having regard also to the whole of the debts which by the laws of either country are payable out of those assets." (2 Kent Comm. 434.)

This general principle of law pronounced by the courts of the various States of our country has likewise been the policy of England (*In re Kloebe. Kannreuther* v. *Geiselbrecht*, 28 Ch. Div. 175, decided in 1884.) In that case ancillary administration of an insolvent estate of a non-resident decedent was involved. The court remarked: " I can find no case in which the court in distributing assets has made an inquiry as to the nationality of different creditors, or ordered that English creditors should be paid in priority to others. There is not a fragment of authority for such a practice. I think Mr. *Westlake*, in a passage cited lays down the law perfectly correctly. In sect. 102 of the last edition of his work on Private International Law, he says: ' Every administrator, principal or ancillary, must apply the assets reduced into possession under his grant in paying all the debts of the deceased, whether contracted in the jurisdiction from which the grant issued or out of it, and whether owing to creditors domiciled or resident in that jurisdiction or out of it, in that order or priority which according to the nature of the debts or of the assets is prescribed by the laws of the jurisdiction from which the grant issued.' "

Were it not for the *dictum* in the case of *Wedemann* v. *United States Trust Company* (258 N. Y. 315, 319), I doubt whether any question would have arisen with respect to the rights of the various creditors in this estate. The *dictum* in the *Wedemann* case, which, it is urged

by the domestic creditors, entitles them to priority of payment of their claims, reads as follows: " There is a strong implication in section 165 of the statute that priority in the discharge of debts which are due to residents of this State is intended." This statement would seem to be at variance with the *dicta* of the Court of Appeals in *Helme* v. *Buckelew* (229 N. Y. 363) and of the Appellate Division, Second Department, in *Bostwick* v. *Carr* (165 App. Div. 55). In *Helme* v. *Buckelew*, Judge CARDOZO, writing for the court, said: " The general duty of ancillary representatives is to transmit the assets to the domicile (Code Civ. Pro., sec. 2634), and the utmost the surrogate may do is to direct that a *pro rata* share be retained for local creditors (Code Civ. Pro., sec. 2635; *Bostwick* v. *Carr*, 165 App. Div. 55)."

In *Bostwick* v. *Carr* the court said: " In the administration of domestic estates, the principle of equality of distribution prevails as to all creditors within the same class. It is equally the general policy of the State to transmit to foreign jurisdictions property here that is under administration there, save that in case of insolvent estates such of the property may be distributed here to domestic creditors as will give them their *pro rata* share of all the distributable assets (Code Civ. Pro., §§ 2634, 2635). No attempt in terms has been made by the Legislature to disturb this fundamental and historic policy."

The court added: " The administrator could not of right apply the property to the payment of the plaintiff's debt, and if he sought to do so it would be recoverable, at least to the extent that the plaintiff was paid beyond his *pro rata* share."

Importing to the *dictum* of the court in the *Wedemann* case an interpretation most favorable to the domestic creditors, the only fair inference that may be drawn is that the priority referred to is the priority in the discharge of debts due to residents of this state where the estate is solvent, and not insolvent. (*Dawes* v. *Head*, 3 Pick. 128, at p. 145.) Section 165 of the Surrogate's Court Act clearly provides that a creditor's share of the distributable assets is based upon the amount of debts " here and elsewhere."

On the subordinate question of whether the discretion of the surrogate shall be exercised in favor of a direct distribution to the foreign creditors of the New York assets, I am of the opinion that the circumstances of the present estate justify such a direct distribution.

The decedent died a resident of the Argentine Republic. There is no domiciliary representative functioning in that country with similar powers to an executor or an administrator. It would be futile, therefore, to direct a distribution to a prospective repre-

sentative to be appointed in the country of domicile where no person has seen fit to qualify and where the assurance of such appointment is entirely lacking. The foreign creditors have been permitted to appear in the accounting proceeding and have been given opportunity to prove their claims. All the assets of the estate, available for distribution, appear to be located within our jurisdiction. A direct distribution will, therefore, be decreed to the foreign creditors who have appeared and proven their claims.

I hold, therefore, that the local creditors are not entitled to preferred payment of their debts but that they must share *pro rata* in the distribution of the assets with the foreign creditors. Accordingly, recoupment or repayment to the estate must be made by the local creditors whose claims have been paid in full, to the extent that they have been overpaid their *pro rata* shares, except as follows:

(a) As to the claims of the Irving Trust Company, Barrett Company and Fred C. Strype, they will be remitted to the referee, to hear and determine all questions of set-off or defenses to the repayment of the amounts heretofore overpaid to them.

(b) The claim of the Quaker Oats Company for $740 was a preferred claim and is not subject to any deduction for recoupment or repayment to the representative of the estate. This claim represents moneys collected by the decedent in South America, as agent or trustee for the Quaker Oats Company, and was properly paid by the temporary administrator to the creditor. Furthermore, the equities of the creditor had been changed by reason of the termination of the surety bond upon which it could have sued the surety to recover for any losses for defalcation or failure to make good any money coming through the decedent's hands. The temporary administrator will, therefore, be relieved from liability for surcharge for the amount of the claim.

(c) Against the payments made by the temporary administrator of $10,789.68 to the Independent Fruit Auction Corporation, there should be offset the sum of $2,116.43 paid by the corporation to the temporary administrator after the death of the decedent. The claim of that company is, therefore, reduced to $8,673.25, that sum being the net amount of indebtedness existing at the date of the decedent's death and recoupment must be computed on the latter amount.

Supplementing my original decision (N. Y. L. J. Oct. 20, 1934), the issues reserved by the referee for determination by the surrogate are disposed of as follows:

1. The claim of Joseph S. Johnston for additional compensation is allowed at the sum of $1,500, payable out of the estate.

2. The payment of the sum of approximately $4,300 as salary to Frank J. Cox is allowed.

3. The payment of $398.20 made by Walter Van Bokkelen to himself as salary while acting as first temporary administrator is allowed.

4. Commissions to Walter Van Bokkelen, as first temporary administrator, are disallowed. Commissions of Frank J. Cox, as second temporary administrator, were waived by him.

5. The indebtedness of Frank J. Cox to the decedent in the sum of $1,056.54 I find had been forgiven by the decedent and is, therefore, not a proper surcharge. The claim to a surcharge against Frank J. Cox, as temporary administrator, for failure to collect the debt of Walter Van Bokkelen to the estate in the sum of $96,428.02 cannot be sustained, because of the latter's insolvency and ultimate bankruptcy. Such sum is to be brought into the account, but the surety cannot be held liable for the failure of the temporary administrator to collect the debt.

Proceed accordingly.