In the Matter of the Estate of LIBERTUS VAN BOKKELEN, Deceased.

Surrogate's Court, New York County, September 22, 1938.

*Howard V. Miller*, for the petitioner, D'Arcy Van Bokkelen, as administrator *de bonis non*.

*Patterson, Eagle, Greenough & Day*, for Carroll G. Walter, as successor administrator *de bonis non*.

*Appleton, Rice & Perrin*, for the respondent President and Directors of The Manhattan Company.

DELEHANTY, S. The estate of deceased has been in this court since February 14, 1929. On that date letters of temporary administration were granted to Walter Van Bokkelen. On February 20, 1929, Frank J. Cox was appointed to succeed Walter Van Bokkelen in this capacity. On May 12, 1930, a decree was made granting letters of general administration to Clara Van Bokkelen. She in turn was succeeded in this office by D'Arcy Van Bokkelen on December 21, 1931. Although original letters were granted in this estate the court has ruled that the administration here is ancillary in nature as deceased was domiciled in Argentina. (*Matter of Van Bokkelen*, 155 Misc. 289.) The proceedings in the estate have been numerous. One controversy will be found reported (140 Misc. 365). Another dispute reported, as indicated above (155 Misc. 289), related to the efforts of domestic creditors to get full payment of their claims, at the expense of the foreign creditors, out of the assets in this jurisdiction. The foreign creditors contended that they had a right to share *pro rata* in the local assets. This contention was upheld. After it had been determined that the domestic creditors could not be paid in full from assets available here a discovery proceeding was begun here in April, 1935, whereby the amount of alleged overpayments made to respondent during the domiciliary administration at Buenos Aires was sought to be recovered. On the ground that this court had no jurisdiction of assets paid in the domiciliary jurisdiction by the domiciliary administratrix a motion to dismiss the proceeding was granted. (*Matter of Van Bokkelen*, 156 Misc. 439.) The Appellate Division modified the order of this court by denying respondent's motion to dismiss the petition without prejudice to a renewal thereof upon proof that the fund was " received in Argentina in the course of the

administration of the estate according to the law of the domicile." (247 App. Div. 721.)

Thereafter an accounting proceeding was begun by petitioner. The two proceedings were then consolidated. New questions raised in respect of the estate were thereupon considered and settled by a decree which reserved for future determination the problem stated by the Appellate Division. The parties to this latter dispute meanwhile developed admissible proof concerning what was done in Buenos Aires in effecting payments to the respondent and in respect of the relevant Argentina law.

Deceased died intestate at Buenos Aires on February 9, 1929, at five P. M. From November 5, 1928, to February 4, 1929, respondent purchased or discounted ten drafts drawn by deceased through an agent in New York on himself at Buenos Aires for the aggregate amount of $185,830.94. These drafts for the purpose of collection were forwarded by respondent to its correspondent in Buenos Aires. Maturity dates thereof ranged from February 9, 1929, to April 30, 1929, inclusive. The proof now before the court shows that the first draft purchased by respondent in the sum of $25,000, maturing on the date of deceased's death, was paid before the hour of death on that date. Petitioner has accordingly discontinued efforts to recover that sum and the aggregate amount presently in controversy is, therefore, $160,830.94.

Deceased left as persons interested in his estate under the law of Argentina, Benjamin, Clara and Laura Van Bokkelen, his father, mother and wife respectively. Both parents were in California at that time. The widow, six days after the death of deceased, filed a petition with the " Court of First Instance in Civil Causes " in Buenos Aires (the court of competent jurisdiction for the domiciliary administration of the estate), representing that her late husband had owned an export-import business and shipping agency, for the preservation and continuation of which it was essential that " a provisional administrator  *  *  *  be appointed to manage the business, ascertain and pay debts, operate the current accounts in the banks and generally do everything necessary for the administration of the estate." This is the language of the petition according to an expert on Argentina law who is associated with respondent. One of the experts associated with petitioner asserts that the Spanish in question when englished should read " to manage the current business, collect monies due and make payments due." This point of disagreement is, however, a small matter since on either version of the original it is manifest that the petition recited a need for power to make payments if due, and obviously a debt which has reached maturity is a " payment due " from debtor to creditor.

The petition then prays for the widow's appointment as provisional administratrix " with all necessary powers to carry on his [the] business including the power to appoint managers and agents under her personal responsibility," and also prays that a notary be appointed to make an inventory of the estate.

Three days thereafter, on February 18, 1929, an order was made directing that creditors, heirs and the taxing authorities be cited by publication. The next day, the taxing authorities consenting, the court made an order appointing the widow " provisional administratrix of the estate   *   *   *   with all the powers inherent in her official position and the powers requested by her in her petition." The order also appointed the notary, Esteban Coronado, to make the inventory sought by the widow.

On February 28, 1929, the widow procured a further order directing nine banks in Buenos Aires to render accounts showing the debit or credit standing of deceased on their books as of the date of his death. On the 4th of March, 1929, the widow further petitioned to have her powers increased so as to satisfy the demands of certain banks who desired her specifically to possess the power " To close, open or continue current accounts, to sign and endorse checks, drafts or notes, to obtain credits, to overdraw bank accounts, and in general to make use of credits in the manner and to the extent that the decedent had done and also to grant powers of attorney to do the same." Two days later, the taxing authorities consenting, the domiciliary court ordered that " the administratrix of this estate,   *   *   *   is granted the authority requested."

The record of the proceedings in Buenos Aires further shows that the widow on April 5, 1929, " on her own behalf and in the capacity of administratrix of the estate of her husband   *   *   * and in representation of " the parents of the deceased, from whom she had obtained appropriate authority, gave a power of attorney to Doctors Hechart, L. P. O'Farrell and V. O'Farrell to represent her in the estate proceedings.

On the 10th of April, 1929, a petition was filed looking to the fixation of the inheritance tax. An accountant (i. e., an appraiser) was accordingly appointed by the court on April 17, 1929. On the nineteenth of April, in response to the published citation to creditors, Ernesto Tornquist & Co. appeared in the proceeding and filed a proof of its claims. On May 6, 1929, all the assets of the estate were pledged to secure payment of whatever inheritance taxes might be found due. On the basis of this pledge the court by order of May 21, 1929, decreed that the parents of the deceased were his " universal heirs." This decree was made " without prejudice to the rights in his [the deceased's] estate given by law to his surviving spouse."

On May 22, 1929, the accountant theretofore appointed by the court reported the net value of deceased's business on the date of his death as 1,353,218.87 pesos. Then on June 3, 1929, the estate representative petitioned for fixation of the tax. Thereafter the tax was established by the taxing authorities to be 9,832.80 pesos on the basis of a taxable estate worth 1,356,218 pesos. This amount having been paid, the court made an order on July 23, 1929, declaring that the estate tax had been satisfied.

Meanwhile the nine drafts here in controversy maturing subsequent to deceased's death had been presented for payment. Substantially on their several maturity dates the drafts were honored by the administratrix who acted for this purpose through an agent to whom she had given a power of attorney on March 7, 1929. This power was granted subsequent to the payment of the two drafts first to mature after the deceased's death. By the terms of the power, however, the donee thereof was authorized generally to manage the business of deceased and specific authority was conferred " to withdraw funds now or hereafter deposited in official or private banks, and to make new deposits, signing for the purpose such orders for payment, drafts and checks as may be necessary." The instrument in question also expressly served " to confirm proceedings or steps taken prior to the present power  *  *  * and finally, to do all such acts and accomplish all such steps as may be necessary for the better discharge of the present power of attorney."

In view of the power of attorney under which he acted plus the failure of the administratrix to repudiate his conduct the drawer of the checks used to pay respondent when it presented the drafts was acting as the *alter ego* of the administratrix. Moreover, his actions were also performed in behalf of the parents of deceased by virtue of the broad authorization to represent them which they gave to the widow by the instruments dated March 4, 1929, and February 28, 1929. As a matter of Argentina law the payments were made by the administratrix and by the parents of deceased. This preliminary conclusion having been reached it is appropriate to restate the decision made by the Appellate Division in sending this matter back to this court. The appellate court in effect indicated that the motion of respondent to dismiss this discovery proceeding must be granted or denied contingent on whether the proof shows or fails to show that the payments in controversy were " received in Argentina in the course of the administration of the estate according to the law of the domicile."

That the payments were " received " in Argentina is certain. They were made to respondent in the city of Buenos Aires by checks

drawn on banks located there in favor of respondent's Buenos Aires correspondent. An argument is made by petitioner that the payments were " received " in New York (a) because some of the funds employed were sent to Buenos Aires from the New York ancillary estate to meet the obligation due respondent, and (b) because payments made in Buenos Aires were by checks drawn to the order of respondent's correspondent, *nominatim*, so that respondent did not " receive " payment until it obtained its correspondent's remittances. Both arguments are insufficient in law; the former because assets received at the domicile from any source become domiciliary assets and the latter because the payments to respondent's agent were payments to respondent according to the most elementary principles of the law of principal and agent.

That the payments were made " in the course of the administration of the estate " is also a certainty. On this subject petitioner points out that the drafts were paid by checks drawn by one Hudson acting under the power of attorney mentioned above. It is argued that Hudson at no time in express terms received authority from the administratrix to pay the debts of deceased. It is inferred, therefore, that the payments in question were not made in the course of administration of the estate. The administratrix never raised the question. Her silence in respect of Hudson's actions constituted under Argentina law a ratification of Hudson's actions. The Civil Code of Argentina provides that:

" 1969 (1935). Implied ratification by the principal shall be deemed to arise from any act of his which necessarily presupposes approval of the act done by the attorney in fact. Such ratification shall also be deemed to arise from silence of the principal if, upon notice by the attorney in fact of any act done, the principal shall not have answered with respect to such act.

" 1970 (1936). Ratification is equivalent in effect to execution of a power of attorney, and is retroactive in its effect as between the parties to the date of the act constituting the attorneyship in fact, in so far as concerns all consequences of such attorneyship; but without prejudice to rights created by the principal in favour of third persons during the period intervening between such act of the attorney in fact and ratification thereof."

The final question requiring determination is whether the payments made were received in accordance with " the law of the domicile." On this, the pivotal issue (as well as on the other points argued), the court has had the benefit of the opinions of eleven experts on the law of Argentina or on the laws of countries enjoying a similar jurisprudence. Four experts deliver it as their opinion that the payments were not made in accordance with Argen-

tina law, while seven reach the opposite conclusion. Manifestly the payments were " received " according to the law of the domicile provided they were " paid " in accordance therewith. If, then, it appears from the Argentina law that the widow of deceased either in her quality as administratrix or in consequence of her status as heir (either in her own person or as attorney in fact of the parents of deceased) or as the outcome of special powers lawfully conferred upon her by the domiciliary court was authorized to make the challenged payments to respondent, it will be established that the latter received the funds in accordance with the law of the domicile. If it be true that on none of the specified grounds could the money have been lawfully *paid* there still remains a question whether the funds were lawfully *received* and, therefore, irrecoverable from respondent. It is unnecessary, however, to treat of this subsidiary question because the proof establishes that on various grounds the payments were lawfully made. Though the inherent powers of a provisional administratrix in Argentina are somewhat similar to those of a temporary administratrix in this State and are primarily custodial and preservative, no reason appears why under Argentina law these powers should not be expanded by a court of competent jurisdiction to meet the exigencies of any given estate. In the present instance the estate of deceased was an existing business. When administration was sought the Argentina court was advised that what was needed was a charter of authority sufficing to enable the business to be continued. The court made a suitable order and the administratrix was thereafter empowered to do whatever prudent judgment would dictate in order to maintain the business. In making payments of deceased's drafts as they were severally presented for payment almost immediately after his death the administratrix adopted a course reasonably open to her under the terms of her appointment notwithstanding its susceptibility to criticism when examined years afterward. That her authority comprehended the area within which she acted is indicated by the commentary of Fornieles on the law of succession, cited by both parties. The avoidance by the administratrix of a protest of deceased's commercial paper was an act of conservation of the main asset when looked at not in 1938 but in the narrower perspective of February to April, 1929.

Again, under the law of Argentina, the survivors of one who dies intestate are confronted with a choice unknown to New York law. The estate of deceased is subject either to an heir's " pure and simple acceptance " (Civil Code, § 3353) or to his acceptance " with benefit of inventory " (Civil Code, § 3392). In the former case " The acceptance of the inheritance leads to the definitive

confusion of the inheritance with the estate of the heir " (Civil Code, § 3376) and " An heir who has accepted an inheritance (in this pure and simple fashion) is bound * * * to pay the debts and charges of the inheritance, not only out of the inherited property, but also out of such heir's separate property " (Civil Code, § 3377). Moreover " Upon the acceptance of the inheritance, (purely and simply) the ownership thereof becomes vested in the person of the acceptor, as of the date of the opening of the succession " (Civil Code, § 3378), namely, as of the date of deceased's death. Argentina law favors pure and simple acceptance. The alternative form of acceptance must be express and not implied. An heir desiring to accept with benefit of inventory must so signify by a declaration made within ten days before the court having jurisdiction of the succession. (Civil Code, § 3397.)

In the present case the heirs of deceased made a pure and simple acceptance of the estate. There thereupon ensued a confusion of goods of the heirs and the estate binding the property of the former as well as that of the latter to the discharge of all debts of deceased. Under these circumstances it becomes pertinent to inquire what the powers are of an heir in respect of the payment of deceased's debts altogether apart from the powers of a provisional administratrix in charge of a business establishment. According to section 3432 of the Civil Code, " In the absence of objections by creditors, an heir may pay creditors and legatees as and when their claims are presented. Creditors who present claims at a time when no further assets of the succession are available may proceed against legatees to the extent of legacies received, but only for a period of three years. An heir may make payment to himself." It is true that the heir is not affirmatively obliged to make payments on the instant when they are demanded. But he may do so. And if he waives his right to withhold payment for the period of four months authorized by the Civil Code the payments thus made are not recoverable (Civil Code, § 824) provided the transaction is not tainted by fraud in which the payee is a participant. (Civil Code, §§ 996 and 1002.)

It being premised that the payments here, by operation of Argentina law, were payments made by the heirs of deceased who had made a pure and simple acceptance of the estate (and this premise is necessitated by the Argentina law on ratification), and the fact being further noted that no creditor interposed any objection to the payments to respondent, it would appear that section 3432 of the Civil Code in and by itself disposes of the present controversy. Petitioner, however, argues that this statute must be denied to mean what it says due to the Argentina law dealing with " privileges "

(preferences). It is unnecessary to give at this place the relevant statutes dealing with privileges. It is enough to remark that Argentina law like New York law accords to certain classes of creditors of a deceased priority in right to payment and as to creditors within the same privileged class it specifies that they are to participate *pro rata*. (See especially Civil Code, § 3916.) Petitioner, therefore, argues that when the heirs of an insolvent estate pay a general creditor in full under the authority of section 3432 of the Code their conduct cannot be an action performed " according to the law of the domicile." Such a payment it is said would " nullify " the numerous provisions of the Code dealing with " privileges." This might be a controlling argument under New York law but it lacks force under Argentina law. Our jurisprudence knows nothing of " universal heirs " and the definitive confusion of the property of deceased with that of his universal heirs. As nearly as may be this civil law device so merges distributees and deceased that the former for all practical purposes have all the rights and powers enjoyed by the latter in life. As deceased in life could have paid respondent as the drafts matured the universal heirs could do likewise and their payments would be in accordance with the law of the domicile.

But it is further argued that the payments were made when the estate was insolvent to the knowledge of the universal heirs and the action was, therefore, void. That the universal heirs of deceased knew his estate to be insolvent when these payments were made has not been proved. It is impossible to reconcile the existence of such a belief on the part of the heirs with their making of a " pure and simple " acceptance of the " succession." Were it assumed, however, that the heirs possessed such knowledge respondent under Argentina law would not be open to a successful action to recover the payments unless it too knew of the insolvency. No proof has been offered in this proceeding to show that respondent had any such knowledge.

Briefer mention may be made of two further arguments advanced by petitioner. It is asserted that section 267 of the Surrogate's Court Act, as amended in 1936, is relevant to the present inquiry. The answer is that if New York law were controlling here some merit might attach to the contention but under the law of this case as declared by the Appellate Division the payments are to be tested not by our law but by the law of the domicile. There is also considerable argumentation dealing with the success which would crown an effort under Argentina law if an aggrieved creditor would sue in Argentina to recover back these alleged overpayments.

This court cannot make a decision based on the possible outcome of an hypothetical litigation.

The payments here were received by respondent in Argentina in the course of the domiciliary administration of the estate in accordance with the domiciliary law. Consequently the present proceeding must be dismissed. Submit, on notice, decree accordingly.