New-York Special Term, November, 1848. *Harris*, Justice.

## Lawrence *vs.* Elmendorf and Pool.

Where administration is granted upon the same estate, in different states, upon what principles is the administration to be governed?

It seems to be settled, at least in this country, that the administration of the estate of a deceased person is to be governed by the laws of the state authorizing such administration. *Per* Harris, J.

The general rule is that the effects of a deceased person are to be administered under the authority of the local jurisdiction in which they are situated. And in such administration respect should be had to the aggregate amount of the estate, and debts, foreign and domestic.

The true principle which should govern, in all cases of double administration, is so to marshal the different funds under administration as to produce equality among all creditors, whether foreign or domestic.

Upon this principle the courts of this state will so control the distribution of funds here, in reference to preferences obtained by creditors of an intestate in another state, as to secure equality among all the creditors.

This was a motion for an injunction. The plaintiff alleged in his complaint, that Isaac Lawrence died on the 12th of July 1841, intestate, and that letters of administration upon his estate were granted by the surrogate of New-York to John L. Lawrence. That the administrator, on the 13th of July, 1843, presented to the surrogate a petition praying for authority to sell the real estate of the deceased for the payment of his debts; and such proceedings were had upon the petition, that the real estate of the deceased had been sold and the proceeds brought into the office of the surrogate for distribution. That the debts established against the estate amounted to $457,316,94, upon which dividends had been paid, to the amount of about 47½ per cent. That of the debts against the estate, $403,759,76 were owned by the plaintiff, and that the assets of the estate in the state of New-York would not realize more than ten per cent. beyond the dividends already paid. The complaint further stated that the defendant Elmendorf, who was a resident of the state of New Jersey, proved his debt against the estate, amounting to $1759,21, and had received the same dividends

Lawrence *v.* Elmendorf.

thereon as other creditors; that he had procured letters of administration to be granted upon the estate in New Jersey, to one Frelinghuysen, without notice to the plaintiff or other creditors in New-York; that the administrator in New Jersey had procured an order to *limit creditors*, which was published in that state, and did not come to the knowledge of the plaintiff until after the time limited therein had elapsed. That the only claims presented were those of Elmendorf and the defendant Pool, who was also a resident of New Jersey; that Elmendorf's claim was the same he had proved before the surrogate of New-York, and Pool's had also been established before the surrogate of New-York, although the plaintiff had subsequently filed his bill in equity, in New-York, against Pool, alleging that the decree establishing his debt had been obtained by fraud, and praying that he might be restrained from the collection thereof. That the administrator in New Jersey allowed the claim of Elmendorf, and also that of Pool, to the amount of about $11,000, and thereupon made application for authority to sell certain real estate in that state of which Isaac Lawrence died seised—and a decree was made directing him to sell such real estate and divide the proceeds ratably between the defendants. That the real estate had been sold under such decree for about $3000, and the sale had been confirmed. That the defendants contended they were entitled to divide the proceeds of the real estate in New Jersey between themselves, to the exclusion of other creditors, and also that they were entitled to share equally with other creditors in the proceeds of the real estate sold in New-York. The plaintiff asked that so much of the moneys to be distributed by the sheriff of New-York as the defendants would otherwise have been entitled to receive, might be distributed to the other creditors who had proved their debts, so that having regard to the whole amount of assets in both states, all the creditors might participate equally, in proportion to their respective debts—and in the meantime that the defendants might be restrained from receiving from the surrogate of New-York any dividend which might be declared in their favor.

The answers of the defendants did not materially vary the facts as above stated.

*W. B. Lawrence,* for the plaintiff.

*George Wood,* for the defendants.

HARRIS, J.   Where administration is granted upon the same estate, in different states, what are the principles upon which the administration is to be governed?   This inquiry has been much discussed and ably considered by the most eminent jurists of our country.   All agree that it involves considerations equally delicate and difficult.   It seems now to be settled, at least in this country, that the administration of the assets of a deceased person is to be governed by the laws of the state authorizing such administration.   " The ground upon which this doctrine has been established," says Mr. Justice Story, " is, that every nation has a right to dispose of all the property actually situate within it, so as to protect itself and its citizens against the inequalities of foreign laws which are injurious to their interests."   (*Story's Conflict of Laws,* §§ 524, 525.)

The subject was very fully examined and discussed by Chief Justice Parker, in *Dawes* v. *Head,* (3 *Pick.* 128.) In that case Thomas Stewart had died at Calcutta, insolvent, and leaving a will which had been duly proved in the country where the testator had his domicil at the time of his death. Having property at the time of his death, in Massachusetts, letters of administration with the will annexed were granted in that state, to Head.   The question considered in that case was, whether the funds collected in Massachusetts should be appropriated to the payment of such debts as might be regularly proved there, although it had been made to appear that the whole estate was insufficient to pay all the debts, and that the effects there were wanted by the executor abroad to enable him duly to administer the estate.   " What shall be done," the learned judge emphatically inquires, " to avoid on the one hand the injustice of taking the whole funds for the use of our

citizens, to the prejudice of foreigners, when the estate is insolvent, and on the other, the equal injustice and greater inconvenience of compelling our own citizens to seek satisfaction of their debts in distant countries?" His answer, which is repeated and commended by Chancellor Kent, (2 *Kent's Com.* 434,) is equally emphatic. "The proper course," he says, "would undoubtedly be, to retain the funds here for a *pro rata* distribution, according to the laws of our state, among the citizens thereof, having regard to all the assets, either in the hands of the principal administrator or of the administrator here, and having regard also to the whole of the debts which by the laws of either country are payable out of those assets, disregarding any fanciful preference which may be given to one species of debt over another, considering the funds here as applicable to the payment of the just proportion due to our own citizens, and if there be any residue it should be remitted to the principal administrator, to be dealt with according to the laws of his own country."

The same doctrine has been established in Pennsylvania; (*Mothland* v. *Wiseman*, 3 *Penn. Rep.* 185 ; *Case of Miller's estate*, 3 *Rawle*, 312 ;) also in South Carolina; (*Topham* v. *Chapman*, 1 *Const. Rep. S. C.* 292.) The general rule, as derived from all the cases on the subject, seems to be, that the effects of a deceased person are to be administered under the authority of the local jurisdiction in which they are situated ; and that in such administration respect should be had to the aggregate amount of the estate, and debts foreign and domestic. (*See Heirs of Porter* v. *Heydock*, 6 *Verm. Rep.* 374 ; *Harvey* v. *Richards*, 1 *Mason*, 381 ; *Doolittle* v. *Lewis*, 7 *John. Ch.* 49.)

It is true that in the cases to which I have referred, and indeed in all the cases I have examined in reference to this subject, the question arose upon what is called the auxiliary or ancillary administration. But I understand the terms, principal and auxiliary administrations, to be used as indicating the objects of the different administrations, and not any distinction in law as to the rights of the parties. Each administration, whether granted in the state of the deceased person's domicil or

a foreign state, is, so far as it relates to jurisdiction, independent and exclusive. On the other hand, so far as it relates to the payment of debts, each is auxiliary to the other. (*See Harvey v. Richards, above cited.*) I cannot doubt, therefore, that if it was the duty of the court, in *Dawes* v. *Head,* to retain the funds subject to its control, for the purpose of securing to the citizens of that state, who were creditors of the estate, their proper share of all the assets of the estate, it was equally the duty of the court at Calcutta to see that the action of the court in Massachusetts did not deprive other creditors of a just participation in the funds of the estate. I think the true principle which should govern in all cases of double administration is, as it was stated to be by the plaintiff's counsel upon the argument, so to marshal the different funds under administration as to produce equality among all creditors, whether foreign or domestic. It is upon this principle that courts of equity interfere to marshal funds so that all parties having equal equities may receive their due proportions. The surrogate's court may not be competent to make such an equitable adjustment; but there can be no doubt of the power of a court of equity to interfere for the purpose of effecting this result.

I am aware that a distinction has been supposed to exist between the proceeds of real estate sold for the payment of debts and the proceeds of personal estate. The general rule in respect to the latter is that it follows the person of the owner, and must be governed by the law of the place where he has his domicil, while the title to real estate and the disposition of it, is exclusively regulated by the law of the place where it is situated. Accordingly it is said by Justice Story, (*Confl. of Laws,* § 523,) that if an administrator sells real estate for the payment of debts, pursuant to the authority given him under the local laws *rei sitæ,* he is not responsible for the proceeds, as assets, in any other state, but they are to be disposed of, and accounted for, solely in the place, and in the manner, pointed out in the local laws. But I do not think this principle affects the question under consideration. It is admitted that the proceeds of the real estate sold in New Jersey must be disposed of according to

the laws of that state, but the question is whether, in the disposition of the proceeds of other real estate sold in this state for the payment of debts, regard may not be had to the fact that some of those debts are also entitled to be partially or fully paid out of funds arising from the sale of other real estate in another state. It was said upon the argument that the proceedings in New Jersey having been taken since the defendants' debts were established in New-York, no notice can be taken of those proceedings here. But is this so? Suppose the defendants, by means of the administration in New Jersey, had succeeded in obtaining payment of the entire amount of their debts, could it be pretended that because the surrogate of New-York had made an order establishing their right to a ratable proportion of the funds raised in this state, with other creditors, they were entitled to their dividend, notwithstanding their debts had been paid? No one would maintain, for a moment, such a position; and yet it seems to me that the same principle that would require the court here, in the case I have supposed, to withhold from the defendants their dividend, requires the court so to control the distribution of the funds here, in reference to the preference the defendants have obtained in New Jersey, as to secure, what the law intends, equality among all the creditors.

Suppose the converse of the facts as they are presented here had been the case—that the defendants had not proved their debts in New-York so as to entitle themselves to receive their share of the funds raised here; and that the plaintiff, after having established his debt and received his dividends here, had also proved his debt in New Jersey and claimed to share equally with the defendants there: would any one doubt the power of the court there to pay the defendants their full share of the estate, having reference to the assets and the debts in both states? *Davis* v. *Estey*, (8 *Pick.* 475,) was such a case. Administration had been granted upon the estate of David Hicks, in Vermont, where he resided at the time of his death. The estate was insolvent, and the time prescribed by law for proving debts against it had expired. Davis, having received no notice of the proceedings, had not presented his claim.

Subsequently administration was granted upon the same estate in Massachusetts. The administrator, under authority obtained for that purpose, sold the real estate which Hicks owned in that state at the time of his death. The proceeds were sufficient to pay the debt of Davis, in full. The court held that as the estate was insolvent, the creditor in Massachusetts was not to be paid his whole debt to the prejudice of the creditors in Vermont, but only a *pro rata* dividend. The administrators were directed to ascertain the amount of the assets and debts in both states and to pay the creditors there, *pro rata.* I am satisfied that this is the proper rule to adopt in the present case. The motion for an injunction is therefore granted.

RENSSELAER GENERAL TERM, November, 1848. *Harris, Watson, and Parker*, Justices.