KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.— November, 1881.

### CARROLL v. HUGHES.

*In the matter of the judicial settlement of the account of* JAMES HUGHES, *. administrator, etc., of* PETER HUGHES, *deceased.*

An administrator, etc., is not entitled to his commissions until they have been allowed by the Surrogate.

A party objecting to an account must sustain his objections by proof, before they can be allowed.

Charges for legal services, rendered to an administrator, etc., upon an accounting, must be separately stated, and accompanied with an affidavit showing conformity to Code Civ. Pro., § 2562.

In the absence of proof to the contrary, the laws of a sister State are presumed to be the same as our own.

Where there are several administrations on the estate of a decedent, the one granted in the country of his domicil is the principal one, and the others are ancillary.

The decedent died intestate while domiciled in the State of Pennsylvania, leaving next of kin in New York and in Ireland, and creditors but no next of kin in the State of his domicil. His brother, J., residing in this State, took possession of the bulk of decedent's personal property in

Pennsylvania, amounting to about $30,000, brought it to this State and obtained letters of administration here, on the ground of assets arriving here after decedent's death. Subsequently C. was appointed administrator, etc., of decedent in Pennsylvania, and, having intervened in the accounting of J., alleged that the latter had taken possession of the property wrongfully, and for the purpose of defrauding decedent's creditors in Pennsylvania, objected to the allowance of any of the credits in his account, and prayed for an order compelling the return of the property to the last-named State. J. was examined, and denied any fraudulent intent. *Held,*

1. That the validity of J.'s appointment could not be questioned on the accounting; and that, having rendered services, he was entitled to his expenses and commissions.

2. That the custody and distribution of decedent's estate belonged to the administrator appointed in the State of his domicil, whose title related back to the death, and therefore

3. That J. had no right to withdraw the assets from Pennsylvania, the creditors in that State having the right to administration thereof under their local laws; and that the balance of assets in J.'s hands, after settlement of his account, must be remitted to C., upon proper security.

APPLICATION by administrator for the judicial settlement of his account.

The facts appear sufficiently in the opinion.

WILLIAM FULLERTON *and* GEORGE L. FOX, *for James Hughes.*

A. J. DELANEY, *for Rev. Matthew Carroll.*

WILSON DURACH, *for Jane McKeever.*

THE SURROGATE.—This is an application on the part of James Hughes, who was appointed by this court administrator of the credits and effects of his brother, the Rev. Peter Hughes, deceased, for a judicial settlement of his accounts.

The Rev. Peter Hughes was domiciled, at the time of his death, in the borough of Braddocks, near Pittsburgh, in the county of Alleghany, State of Pennsylvania. He left next of kin in the State of New York and

in Ireland ; but none in the State of Pennsylvania.  His brother, James Hughes, who was at the time a resident of the city of Brooklyn, went to Braddocks, shortly after the death of Peter Hughes, and, taking possession of the bulk of the deceased's personal property, amounting to about $30,000, brought it back with him to the city of Brooklyn, and on January 5, 1880, obtained letters of administration of the credits and effects of Peter Hughes from this court, alleging that assets of the said Peter Hughes had come into this county after his death.

Later, James Hughes obtained possession of certain Pittsburgh water bonds, of the par value of $4,000, which he claims as his own.

On January 12, 1880, Rev. Matthew Carroll was appointed, in Pittsburgh, administrator of the property of the deceased ; and, having been allowed to intervene and make himself a party to this accounting, he has filed objections to James Hughes's account, claiming, among other things, that he should be charged with the said Pittsburgh water bonds, as part of the estate of Peter Hughes ; that he wrongfully and fraudulently took possession of the property of Peter Hughes, and that, as a consequence of so doing, none of the payments credited to him in his account should be allowed.    The said Matthew Carroll also filed a petition in these proceedings, verified by his attorney, as he was absent from the State, representing that James Hughes had removed the property of the deceased to the State of New York with intent to defraud the creditors of the deceased residing in the State of Pennsylvania ; that they had applied to the authorities, at the place of domicil of the deceased, to compel him, Carroll, to follow James Hughes into the State

of New York, and there invoke the law of said State in their behalf, to compel a return of the said property to the domicil of the deceased ; and praying for an order to that effect.

Jane McKeever, one of the heirs and next of kin, also insists that James Hughes should be charged with the Pittsburgh water bonds, and objects to the allowance of the amounts credited in the account, for commissions and counsel fees, as being excessive.

James Hughes was examined, and it appears by his testimony that, in taking possession of the property of his brother Peter, he acted under the advice of counsel, who told him that he had a right to secure the property and bring it to Brooklyn, and to administer on it here ; that the Rev. Matthew Carroll became the administrator, at the domicil of the deceased, at the request of James, who became one of the sureties on Carroll's administrator's bond; that James knew that there were unpaid creditors of the deceased in Pittsburgh, but left property in Pennsylvania, which, he was subsequently informed, was sufficient to pay all the debts of the deceased and leave a surplus; that the Pittsburgh water bonds belonged to James ; that they stood in his name individually, and represented an investment of his own money, made for him by his brother.

James Hughes was regularly appointed administrator ; his letters have never been revoked ; the validity of his appointment is not questioned, and cannot be, in this proceeding (Roderigas *v.* East River Sav. Inst, 63 *N. Y.*, 460) ; he has acted as such administrator for over eighteen months, and now, when he asks to have his account judicially settled, he is entitled to credit himself

with the expenses of administration (*Redf. Prac.* [1 ed.], 393), and to be allowed his commissions (King *v.* Talbot, 40 *N. Y.*, 76, 96).

It is unnecessary to consider what would be the result, if there were not sufficient assets to pay the creditors in full, or if the next of kin objected to the allowance of these commissions and expenses of administration, on the ground that they would have been saved to the estate but for the wrongful act of James, as it is not pretended that the estate is insolvent, and the next of kin have all been made parties to this proceeding, and none of them object to the charges, except Jane McKeever, and her objection does not raise the question, it being only to the amount charged (Boughton *v.* Flint, 74 *N. Y.*, 476, 485).

The administrator, however, is not entitled to receive his commissions until they shall have been allowed by the Surrogate (Freeman *v.* Freeman, 4 *Redf.*, 211, 215) ; but he testified that he had not yet taken them.

The objections relating to the Pittsburgh water bonds, and the amount paid for lawyers' fees, must be overruled. Persons objecting to an administrator's account must sustain their objections by proof, before they can be allowed (*Redf. Prac.* [2 ed.], 673 ; Boughton *v.* Flint, 74 *N. Y.*, 476, 485 ; Bainbridge *v.* McCullough, 3 *S. C.* [*T. & C.*], 486).    In this case, there is no proof that the Pittsburgh water bonds belonged to the estate of Peter Hughes ; on the contrary, whatever proof there is, on the subject, is the other way.    Neither is there any proof that the charge for legal services is excessive ; but so much of it as relates to this accounting must be separately stated, so that the court may judge whether it exceeds

the limit fixed by section 2562 of the Code, and there should be proof by affidavit of the number of days necessarily occupied in preparing the account for settlement.

In the absence of all proof to the contrary, the laws of Pennsylvania must be presumed to be the same as our own (Monroe *v.* Douglass, 5 *N. Y.*, 447).

When, therefore, Peter Hughes died in Pennsylvania, the State of his domicil, the custody, management and distribution of his personal property in that State were, by law, exclusively committed to the person who might be appointed there, by the proper court, the administrator of his credits and effects (*Dayton on Surrog.* [2 ed.], 208 ; Schultz *v.* Pulver, 11 *Wend.*, 361, 363 ; Lawrence *v.* Elmendorf, 5 *Barb.*, 73, 76 ; *Wms. on Ex'rs.*, 291, note o ; 3 *Redf. on Wills*, 12, 26, 28). When such administrator was subsequently appointed, the title to such property vested in him and related back to the death to the testator (Schultz *v.* Pulver, *supra*). James Hughes, in the meantime, had no right to interfere with the property, except perhaps for the purpose of securing it for the administrator, if it was in danger of being lost. The withdrawal of the assets of the deceased from the State of Pennsylvania was in violation of the rights of the creditors of the deceased in that State ; they had the right to have the assets within the State administered under the authority of the local jurisdiction in which they were situated, and should not be subjected to the injustice and inconvenience of seeking satisfaction of their debts in the State of New York (Lawrence *v.* Elmendorf, 5 *Barb.*, 73, 76 ; Dawes *v.* Head, 3 *Pick.*, 128 ; 3 *Redf. on Wills*, 26, 27).

Where there are several administrations, the one granted in the country of the deceased is the principal one, and that granted in any other country is merely ancillary or auxiliary to it (*Wms. on Ex'rs.*, 430, note g ; 3 *Redf. on Wills*, 26). Those charged with the ancillary administration are liable to account, in the country where it was granted, for all the assets collected there under it, and, after paying from said assets all the debts due to resident creditors, and the proper commissions and expenses of administration, the balance may be ordered, in the discretion of the court before which the accounting is had, either to be distributed to the persons entitled thereto or to be remitted to the place of domicil of the deceased, to be there distributed by the principal administrator (Parsons *v.* Lyman, 20 *N. Y.*, 103 ; Despard *v.* Churchill, 53 *N. Y.*, 192).

But in the principal case, the assets were originally at the place of the deceased's domicil in Pennsylvania, where they should have been administered ; instead of that, they were illegally removed from there to this State, in violation of the rights of the creditors of the deceased residing in the former State, although there is no proof that the removal was with intent to defraud said creditors. The principal administrator asks to have the assets, in the hands of the administrator appointed here, remitted to the place of the deceased's domicil, representing that he requires those assets to pay numerous creditors of the deceased, and his request should be granted.

The balance of assets remaining in the hands of the administrator here, after settling his account, must be remitted to the administrator at the place of domicil of the deceased, on proof that the security which he has

given there is sufficient to cover the additional amount of property which will thus come into his possession, and if not, then on his giving such additional sufficient security, to be approved by the court by which he was appointed administrator.

Decreed accordingly.