983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Kenneth GREGORY, Jr. (91-6400); Robert Louis Beckman
(91-6431), Defendants-Appellants.
 Nos. 91-6400, 91-6431.
 United States Court of Appeals, Sixth Circuit.
 Dec. 22, 1992.
 
 Before RALPH B. GUY, JR. and BATCHELDER, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 The defendants were convicted of several charges relating to the cultivation of marijuana in a national forest. On appeal, they challenge the court's failure to suppress certain items of evidence, the introduction into evidence at trial of allegedly irrelevant and prejudicial evidence, and the court's denial of a motion to require the government to produce a bill of particulars. The defendants also raise several sentencing issues, and Beckman raises an issue as to the sufficiency of the evidence.
 
 
 2
 After a review of the record, we conclude that the evidence was sufficient to support the conviction of Beckman, and that all of the evidence introduced against both defendants was relevant and legally obtained. We therefore affirm the conviction of both defendants.
 
 
 3
 We conclude, however, that there were certain sentencing errors that occurred which will require this matter to be remanded for resentencing of both defendants.
 
 I.
 
 4
 In July 1990, National Forest Service rangers conducting aerial surveillance discovered four patches of marijuana growing in a remote and rugged portion of the Daniel Boone National Forest in Kentucky. In repeated visits to the patches, situated near the shore of Lake Cumberland, the rangers and state police officers observed that wire had been strung over each patch to support the growing plants and that insecticide had been sprayed on the plants. The patches were separated from each other by distances of at least 300 feet and were not connected by distinct trails. By late September 1990, fresh footprints and evidence of recent cultivation convinced the officers that the patches were being tended by a person or persons arriving by boat.
 
 
 5
 A joint task force of state police and Kentucky National Guard officers staked out the area on the morning of September 29, 1990. Lieutenant Charles Cole of the national guard and Detective Robert Motley of the state police stationed themselves near an inlet of the lake. Detective Johnny Creech of the state police and Sergeant Lonnie Tungate of the national guard staked out the patch designated as number one. The other officers apparently went to patches two, three, and four.
 
 
 6
 At approximately 8:30 that morning, a small bass boat emerged from the thick fog in the inlet, dropped off a single passenger, and left. Cole and Motley watched this proceeding from their hidden vantage point, but the fog hampered their observations. In a radio transmission to the other officers, Cole described the boat as a gray bass boat. Cole described the disembarking passenger as approximately six feet two inches, 225 pounds, with dark hair and a mustache; wearing camouflage jacket and pants, glasses, and a red bandanna; and carrying a large backpack. Motley and Cole could not make out any details of the boat's operator other than that he was wearing a tan life vest.
 
 
 7
 A few minutes later, the passenger arrived at patch one. As Creech and Tungate watched, he began to cut limbs off of dead marijuana plants. After watching the man for several minutes, Creech announced himself. The man dropped his backpack and fled. Creech gave chase, but the man escaped through the thick brush. Creech then radioed Motley that the man might be returning to the inlet. However, the man did not return to the inlet, and the officers eventually realized that the man must have escaped by some other route.
 
 
 8
 The officers then radioed a description of the man and the boat to Sgt. Lloyd Dolan of the Kentucky Department of Fish and Wildlife at the Forest Service headquarters on the other side of the lake. Dolan put his boat in the water several miles from the patches and began looking for a gray bass boat with two persons in it.
 
 
 9
 After encountering several other boats out on the lake, Dolan spotted the defendants, Ralph L. Beckman and Robert K. Gregory, Jr., in the middle of the lake, some two miles from the marijuana patches. Dolan observed that Beckman and Gregory were in a black and gray bass boat; that Gregory fit the general physical description of the man Creech had chased; and that Gregory had scratches on his neck and face, at least one of which was bleeding. At the time of this encounter, Gregory was wearing swim trunks, an orange shirt, and a baseball cap. Dolan also noticed several items of camouflage clothing on the floor of the boat.
 
 
 10
 After checking the defendants' fishing licenses, Dolan asked the two men to accompany him down the lake. Beckman and Gregory followed Dolan to the inlet where the officers were waiting. As Beckman drove his boat to the bank, Motley repeatedly shook his head to indicate to Dolan that he did not recognize Gregory or the boat. However, after the two men got out of the boat, Motley became less sure of his initial conclusion that Gregory was the wrong man, while Cole testified that he was able to identify Gregory as the man he had seen earlier that morning.
 
 
 11
 The officers then summoned Creech from patch one to come down to the bank to identify Gregory. After 10 to 20 minutes, Creech arrived and immediately identified Gregory as the man he had seen in the patch. Tungate also identified Gregory. Motley then placed Gregory under arrest.
 
 
 12
 Immediately after identifying Gregory, Creech lifted a pair of brown pants from the bottom of the boat and identified them as the pants worn by Gregory in the patch. However, the pants Creech identified were several sizes too small for Gregory and actually belonged to Beckman. Creech also found camouflage pants, a pair of glasses, a tan life vest, an empty beer can, and a bag of wire on the bottom of the boat. Beckman identified the camouflage pants as Gregory's and the life vest as his. Gregory later told the officers that he needed the glasses, and they were handed to him.
 
 
 13
 As Creech searched the boat, Forest Service Ranger Charles Leitschuh questioned Beckman. According to Leitschuh, Beckman stated that he did not know Gregory. Leitschuh then arrested Beckman.
 
 
 14
 Gregory and Beckman each had a backpack in the boat. Beckman asked Leitschuh to retrieve a checkbook out of his backpack. Beckman also told Leitschuh that both backpacks contained loaded firearms.
 
 
 15
 The officers opened both backpacks. The testimony of the officers conflicts as to whether they searched the packs thoroughly at that time. Leitschuh testified that he only opened the packs to retrieve the checkbook and the guns. Cole testified that Motley rummaged through the backpacks, but Motley testified that he did not search the packs. The items found in the packs were listed the following day when Dolan and Leitschuh conducted a formal inventory search.
 
 
 16
 Beckman's pack yielded numerous personal items, soft drink cans, three AA batteries, two film canisters, and a .38 caliber revolver. The film canisters contained marijuana residue. The search of Gregory's backpack produced numerous personal items and fishing equipment, a pill bottle containing marijuana residue, several AA batteries, black electrical tape, and a .22 caliber pistol. Trace amounts of marijuana residue were found in the bottom of both backpacks.
 
 
 17
 The officers also opened and inventoried the backpack that the fleeing suspect had dropped in patch one (the "field backpack"). The field backpack contained a roll of wire, fungicide, a CB radio with AA batteries, a roll of electrical tape, a pair of wire cutters, and a can of Bud Dry beer.
 
 
 18
 After the arrests, Dolan returned to the area of the lake where he had first encountered Beckman and Gregory. In that first encounter, he had noticed several beer cans floating in the water near Beckman's boat. After returning to the area, Dolan found several full cans of Bud Dry floating in the water.
 
 
 19
 The next day, Leitschuh opened and searched Gregory's truck, which had been parked at a boat ramp some 15 miles from the marijuana patches. Leitschuh found a camouflage coat containing marijuana residue in its pockets and marijuana cigarettes in the ashtray.
 
 
 20
 Approximately one week after the arrests, Morris Coffey, a private citizen, found a backpack (the "lake backpack") submerged in the lake near the marijuana patches. The lake backpack, which had been weighted down with a rock, contained camouflage clothing, a pair of wire cutters, a roll of wire, a red bandanna, a package of rolling papers, a roll of tape, and a garbage bag containing weeds. Coffey discarded the bandanna, the rolling papers, and the garbage bag of weeds and kept the other items for his own use. Two months later, Leitschuh recovered the lake backpack and its contents from Coffey. Leitschuh also found a red bandanna and a label from a package of rolling papers in the area where Coffey said he had discarded items from the lake backpack.
 
 
 21
 A federal grand jury indicted Beckman and Gregory on four counts: one count of conspiracy to manufacture, cultivate, and possess marijuana with intent to distribute, in violation of 21 U.S.C. § 846; one count of aiding and abetting the manufacture and cultivation of marijuana, and one count of aiding and abetting the possession of marijuana with the intent to distribute, both in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); and one count of aiding and abetting the use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 2 and 924(c).
 
 
 22
 Both defendants filed motions to suppress evidence. A hearing was held before a federal magistrate, and the magistrate recommended that the motions be granted in part. Specifically, the magistrate found that the items in plain view in Beckman's boat, including the backpacks, were properly seized, but that the items found inside the backpacks, except for the firearms and Beckman's checkbook, should be suppressed. The magistrate also recommended suppressing the evidence seized from Gregory's truck.
 
 
 23
 After both sides filed objections to the magistrate's report, the district court refused to suppress any of the evidence, finding that it had been seized pursuant to valid inventory searches.
 
 
 24
 Before the trial commenced, Beckman and Gregory moved to exclude evidence relating to marijuana patches two through four, the evidence of marijuana residue, all evidence seized from Gregory's truck, and all evidence recovered from the lake. The district court denied the motions.
 
 
 25
 At trial, the government introduced into evidence items found in the lake, in Beckman's boat, in all four backpacks, and in Gregory's truck. The government also introduced evidence relating to patches two through four. The jury found Beckman and Gregory guilty on the first three counts, but acquitted them of the firearms count. The district court denied their motions for acquittal or a new trial.
 
 
 26
 The district court sentenced both men to 97 months imprisonment. The court arrived at that sentence after adding two-point enhancements to each defendant's offense level for obstruction of justice and possession of firearms. These appeals followed.
 
 II.
 
 27
 Beckman and Gregory both argue that much of the evidence introduced at the trial was seized in violation of the Fourth Amendment. Gregory argues that all of the evidence seized from them must be suppressed because they were detained so that the officers could identify them, while Beckman maintains that there was never probable cause to arrest him. Alternatively, Beckman argues that all of the items seized from his boat must be suppressed, while both men maintain that the government violated the Fourth Amendment by searching their backpacks and Gregory's truck. We examine each of these arguments in turn.
 
 A.
 
 28
 Beckman and Gregory each contend that they were detained illegally. Therefore, they argue that all of the items seized from them are fruits of illegal arrests. Gregory's argument focuses on two specific events: the first encounter with Dolan, and Motley's initial reaction that Gregory was not the man he had seen earlier in the day. Beckman maintains that the officers lacked probable cause to arrest him. We examine these claims separately.
 
 
 29
 Gregory maintains that he was illegally detained when Dolan encountered the two defendants and asked them to accompany him down the lake. Gregory points to Dolan's suppression hearing testimony in which he stated that the defendants would not have been free to go at that point.[1]
 
 
 30
 However, the fact that Dolan might have prevented the defendants from leaving is irrelevant because he did not do so. Instead, the defendants voluntarily agreed to accompany Dolan down the lake. Since there is no creditable evidence in the record that Dolan exerted any form of coercion on the defendants, we conclude that they were not seized when they agreed to accompany Dolan down the lake.[2] See United States v. Mendenhall, 446 U.S. 544, 557-58 (1980) (defendant not seized when she voluntarily accompanied officers to airport Drug Enforcement Agency office).
 
 
 31
 Even assuming that Beckman and Gregory were seized, however, the detention did not amount to an illegal arrest. An officer may detain a person for a brief investigation without probable cause if the detention is based on reasonable suspicion of criminal activity. See Terry v. Ohio, 392 U.S. 1, 27 (1968).
 
 
 32
 Gregory next claims that he was illegally seized when he and Beckman were detained on the shore for 10 to 20 minutes awaiting the arrival of Creech. Upon seeing Gregory and Beckman, Motley initially indicated that Gregory was not the man he had seen earlier in the day. However, after Gregory arrived on the bank, Motley changed his mind and tentatively concluded that Gregory was the man he had seen. Cole came to the same conclusion. Therefore, the officers had reasonable suspicion to detain Gregory and Beckman briefly so that Creech, who had the best view of the suspect, could arrive to look at Gregory. A 10- to 20-minute detention for that purpose was not unreasonable. See United States v. Sharpe, 470 U.S. 675, 683 (1985) (upholding 20-minute investigatory stop); United States v. Knox, 839 F.2d 285, 290-91 (6th Cir.1988) (upholding 30-minute investigatory stop), cert. denied, 490 U.S. 1019 (1989). Accordingly, we conclude that Gregory was not illegally detained while awaiting Creech's arrival.
 
 
 33
 Finally, Beckman maintains that the officers lacked probable cause to arrest him. We disagree. Although the fog prevented Motley and Cole from identifying the operator of the boat that dropped off the man with the red bandanna, we find that the officers had probable cause to arrest the operator of the boat in which Gregory was found once Creech identified Gregory as the suspect.
 
 
 34
 We find that Beckman and Gregory were not illegally arrested or detained. Therefore, the district court did not err in refusing to suppress the evidence that was seized after Beckman and Gregory were arrested.
 
 B.
 
 35
 Beckman next argues that the district court should have suppressed the items seized from the floor of his boat. The magistrate recommended upholding the seizure of these items under the "plain view" doctrine. See Illinois v. Andreas, 463 U.S. 765, 771 (1983). Beckman argues that this recommendation was error because Creech, the officer who actually found the items, did not testify at the suppression hearing.
 
 
 36
 We are not aware of any requirement that the officer who conducts a plain view search testify at the suppression hearing. Several other officers who were present while Creech searched the bottom of the boat testified at the hearing, and their testimony supports the finding that the items he found were on the bottom of the boat in plain view. Therefore, we uphold the admission of the items found in the bottom of Beckman's boat.
 
 C.
 
 37
 Both Beckman and Gregory maintain that the district court erred in rejecting the magistrate's recommendation to suppress most of the items found in their backpacks. The magistrate found that Beckman told the officers that the backpacks contained weapons and that he asked the officers to retrieve a checkbook from his backpack. The magistrate concluded that the warrantless removal of the guns and the checkbook were justifiable, but he recommended suppression of the other items from the backpacks.
 
 
 38
 The district court concluded that the search of the backpacks fell within the "inventory exception" to the warrant requirement. See South Dakota v. Opperman, 428 U.S. 364, 375-76 (1976). Beckman and Gregory argue that the inventory exception is inapplicable because the officers apparently searched the backpacks immediately after the arrests, but did not conduct a formal inventory until the following day. The defendants also point out that the government did not produce the Forest Service's inventory policy at the suppression hearing. See Florida v. Wells, 495 U.S. 1, 4-5 (1990) (requiring suppression where police agency lacked policy to guide conduct of inventory searches).
 
 
 39
 Even if we were to find that the search of the backpacks did not meet the requirements of the inventory exception, we would uphold the search under any one of several other exceptions to the warrant requirement. First, the backpacks were searched incident to the arrest of Gregory and Beckman. See New York v. Belton, 453 U.S. 454, 460-61 (1981) (upholding search of containers found in car after arrest of car's occupants). Second, since probable cause existed to search the vehicle under the "automobile exception," the officers could open and search closed containers found in the vehicle. United States v. Ross, 456 U.S. 798, 825 (1982); see also United States v. Hill, 855 F.2d 664, 668 (10th Cir.1988) (applying "automobile exception" to boats). Third, Beckman's disclosure that both backpacks contained weapons created probable cause to search the backpacks for the weapons.
 
 
 40
 We find that the officers' search of the backpacks did not violate the defendants' Fourth Amendment rights. We therefore affirm the district court's refusal to suppress the evidence found in those backpacks.
 
 D.
 
 41
 The defendants next argue that the district court should have suppressed the evidence found in Gregory's truck. The truck, which was parked at a boat ramp some 15 miles away from the marijuana patches, was impounded and searched the day after the defendants were arrested.
 
 
 42
 The Supreme Court has emphasized that an inventory search may be conducted only pursuant to a standard police policy. Wells, 495 U.S. at 4; Colorado v. Bertine, 479 U.S. 367, 374 n. 6 (1987). In Wells, the Court upheld the suppression of marijuana found in a suitcase during an inventory search of an impounded vehicle because the police's inventory policy did not authorize the opening of closed containers. 495 U.S. at 4-5. In Bertine, the Court approved the opening of a backpack found in an impounded vehicle pursuant to an inventory policy that required officers to open closed containers. 479 U.S. at 370.
 
 
 43
 The magistrate recommended suppression of the items found in Gregory's truck because the government did not introduce a standard Forest Service inventory policy into evidence. The district court denied suppression, observing that Ranger Leitschuh testified that the Forest Service does have a written policy requiring that impounded vehicles be searched and inventoried.
 
 
 44
 We affirm the district court's decision. Although the government did not introduce the Forest Service's inventory policy into evidence, Leitschuh's testimony established that a policy for inventorying impounded vehicles does exist and that he followed it. We find that this testimony is sufficient to meet the government's burden of establishing that the inventory was conducted pursuant to standardized procedures. See United States v. Cooper, 949 F.2d 737, 748-49 (5th Cir.1991) (upholding inventory based on police testimony of inventory policy), cert. denied, --- U.S. ----, 112 S.Ct. 2945 (1992); United States v. Kordosky, 921 F.2d 722, 723-24 (7th Cir.) (same), cert. denied, --- U.S. ----, 112 S.Ct. 94 (1991); cf. United States v. Salmon, 944 F.2d 1106, 1121 (3d Cir.1991) (government failure to produce any evidence of scope of inventory policy renders search invalid), cert. denied, --- U.S. ----, 112 S.Ct. 1213 (1992); United States v. Hahn, 922 F.2d 243 (5th Cir.1991) (same).
 
 
 45
 We therefore find that none of the evidence admitted at the trial was seized in violation of the defendants' Fourth Amendment rights.
 
 III.
 
 46
 Beckman and Gregory contend that the district court erred by allowing the government to introduce irrelevant and prejudicial evidence. Specifically, Beckman and Gregory complain that the district court should have excluded evidence concerning marijuana patches two through four, the lake backpack, the floating beer cans, the marijuana cigarettes found in Gregory's truck, and the marijuana residue found in the backpacks.
 
 
 47
 The defendants maintain that all of this evidence was irrelevant because the government could not link these items to the defendants' alleged cultivation of patch one. See Fed.R.Evid. 401, 402. They also claim that the admission of some of these items unfairly prejudiced them. See Fed.R.Evid. 403.
 
 
 48
 We must affirm the district court's decision to admit evidence unless we find that the court abused its discretion. United States v. Mahar, 801 F.2d 1477, 1495 (6th Cir.1986). In reviewing the district court's exercise of its discretion, we examine the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. United States v. Pollard, 778 F.2d 1177, 1179 (6th Cir.1985).[3]
 
 A.
 
 49
 We turn first to the evidence relating to marijuana patches two through four, the lake backpack, the items that Coffey found in the lake backpack, and the floating beer cans. The defendants maintain that the government failed to link this evidence to them.
 
 
 50
 All of this evidence meets the relevancy requirements of Rule 401. Although there were no established trails between patch one and the other patches, the testimony of the officers established a similar and unusual overhead wire system in each of the patches. The testimony of Coffey established that he found the lake backpack near the marijuana patches and that the backpack contained items, including a red bandanna, similar to those worn by the fleeing suspect. Dolan's testimony established that he had seen cans of Bud Dry floating in the water when he first encountered the defendants, and the officers found a can of Bud Dry with a similar lot number in the abandoned field backpack.
 
 
 51
 The defendants essentially claim that they had nothing to do with these items, a claim that goes to the weight to be given to the evidence, not its admissibility. Since the items are relevant, the defendants must demonstrate that they were unfairly prejudiced by their admission. See United States v. Rey, 923 F.2d 1217, 1222 (6th Cir.1991). Although the admission of these items may have damaged the defendants' case, the defendants have not shown the admission resulted in unfair prejudice. Id. Therefore, we find no error in the admission of these items.
 
 B.
 
 52
 The remaining contested items, the marijuana residue found in the backpacks and the marijuana cigarettes found in Gregory's truck, present a closer question. The defendants contend, and the magistrate found, that the defendants' personal use of marijuana is irrelevant to the crime of cultivating marijuana and that the prejudice from such evidence far outweighs its probative value. The district court allowed the government to introduce the evidence.
 
 
 53
 The marijuana is relevant to show that the defendants were familiar with marijuana. The government's argument and the court's instructions reduced the risk of unfair prejudice by clearly indicating that the charged offenses related to the cultivation of the marijuana found in the patches, not the marijuana cigarettes and residue found in the defendants' possession. Although the issue is close, we conclude that the district court did not abuse its discretion by admitting the cigarettes and residue into evidence. Cf. United States v. Bowling, 900 F.2d 926, 934 (6th Cir.) (upholding admission of personal use evidence in marijuana manufacturing prosecution), cert. denied, --- U.S. ----, 111 S.Ct. 109 (1990).
 
 IV.
 
 54
 Beckman next urges that, even if all of the disputed evidence was properly admitted, the evidence is insufficient to support his conviction as a matter of law. Beckman makes two alternative arguments for insufficiency. First, he maintains that the evidence was insufficient to support a finding that he operated the boat that dropped off the man with the red bandanna. Second, Beckman argues that even if he was the man in the tan life vest who dropped off a passenger near patch one, a rational jury could not have found that he possessed the requisite intent.
 
 
 55
 We review a sufficiency of the evidence claim to determine whether any rational trier of fact could have found all of the required elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In making that determination, we must view the evidence in the light most favorable to the prosecution. Id.
 
 
 56
 The theory of the defense at trial was that the officers arrested the wrong men. That is, Beckman and Gregory denied that they had been in the inlet when a bass boat dropped off a large man wearing a red bandanna. Beckman maintains that the numerous discrepancies in the officers' descriptions of the large man and the boat compel the conclusion that the government failed to produce sufficient evidence to identify Beckman as the man who dropped off the suspect. We disagree.
 
 
 57
 Several officers testified at trial that they were able to identify Gregory as the man who had worn the red bandanna. Beckman points out that at least one officer, Motley, expressed initial doubt about the identification. However, viewing the evidence in the light most favorable to the government, the testimony of Creech, Cole, and Tungate could support a finding beyond a reasonable doubt that Gregory was the man with the red bandanna.
 
 
 58
 Cole testified that he could see the operator of the boat was wearing a tan life vest. When Creech searched the boat, he found a tan life vest on the floor of the boat. Beckman points out, however, that Motley and Cole initially described the bass boat as gray, while the poriton of his boat that is above the waterline is black. However, Dolan testified that he could see the gray portion of the boat when he first encountered Beckman and Gregory. Additionally, Motley's and Cole's initial observations of the boat were hampered by the fog. Finally, Beckman was found in the boat with Gregory, who was bleeding from fresh scratches, approximately one hour after a man fitting Gregory's description ran through thick underbrush.
 
 
 59
 We agree with Beckman that this evidence is not overwhelming. However, when viewed favorably to the government, we find that a rational trier of fact could conclude beyond a reasonable doubt that Beckman was the man in the tan life vest who was seen operating the boat in the inlet.
 
 
 60
 Beckman argues, however, that even if he dropped off Gregory the government failed to establish that he possessed the requisite intent. We disagree.
 
 
 61
 Beckman was convicted of conspiracy to cultivate marijuana with intent to distribute, aiding and abetting the cultivation of marijuana, and aiding and abetting the possession of marijuana with intent to distribute. Each of these charges require proof that Beckman knew that Gregory intended to cultivate marijuana and agreed to participate or aid him in that enterprise. The conspiracy count requires proof of an agreement between Beckman and Gregory to cultivate marijuana. However, the government need not show an overt act by Beckman in furtherance of the conspiracy. United States v. Ayala, 887 F.2d 62, 67 (5th Cir.1989). The aiding and abetting counts require proof that Beckman associated himself with the criminal venture of manufacturing and possessing marijuana; that he participated in it as something he wanted to bring about; in short, that he sought to make it succeed. United States v. Pope, 739 F.2d 289 (7th Cir.1984).
 
 
 62
 Although the evidence was circumstantial, we believe it sufficiently connected Beckman to this venture to enable a reasonable juror to find guilt beyond a reasonable doubt. "In determining the existence of a conspiracy agreement, the trier of fact may rely on circumstantial evidence, including presence and association...." Ayala, 887 F.2d at 67 (citations omitted) (emphasis added).
 
 
 63
 The government agents knew that the marijuana plots were able to be serviced only by boat. Beckman was the owner and operator of the gray and black bass boat that was seen by the agents on September 29, 1990. It was Gregory's truck that was used to haul Beckman's boat to the lake and the truck contained marijuana cigarettes. Although Beckman was not facially identified by the witnesses, he was identified through the tan life vest which the boat operator was observed wearing and was later found in the boat. Gregory and Beckman were found together shortly after Gregory escaped from the surveillance agent in the marijuana patch. Gregory bore the fresh, bleeding facial scratches incurred in making his escape through the brush and branches. Gregory's personal belongings were in the boat. Despite all of the obvious ties between Beckman and Gregory, Beckman initially denied knowing Gregory and later lied about where they had been fishing.
 
 
 64
 Further, the wire found in the boat, which Beckman admitted was his, matched the wire used in the marijuana patches. Beckman's backpack contained marijuana residue and two film canisters with marijuana residue. Pants belonging to Beckman were found in the bottom of his boat with marijuana residue on them, which he could not explain. Beckman also had "AA" size batteries with him which matched some of the batteries found in the portable citizens band radio left behind by Gregory in plot number one.
 
 
 65
 The fact that Beckman was not seen in the marijuana patches would not absolve him from either constructive possession or aiding and abetting liability. Since the jury properly could conclude that there was aiding and abetting liability. Since the jury properly could conclude that there was aiding and abetting liability, they also properly could find an intent to distribute based upon the large size of the crop and the elaborate growing and concealment arrangement.
 
 
 66
 Beckman's argument relative to the sufficiency of the evidence would be strengthened if he had prevailed in any of his suppression of evidence arguments. Since he did not, the evidence was sufficient to support his convictions.
 
 V.
 
 67
 Gregory argues that the district court erred by denying his motion to require the government to produce a bill of particulars specifying which marijuana patches he was charged with cultivating. We review the district court's denial of a request for a bill of particulars for abuse of discretion. Mahar, 801 F.2d at 1503.
 
 
 68
 The purpose of a bill of particulars is to provide a defendant with sufficient notice about his or her alleged offense so as to minimize the danger of double jeopardy and unfair surprise at trial. United States v. Birmley, 529 F.2d 103, 108 (6th Cir.1976).
 
 
 69
 Although the indictment did not specify any of the marijuana patches, Gregory was apprised at the suppression hearing that the government planned to introduce evidence of all four patches at trial. The government furnished a map of the four patches to the defendants. Before trial, the defendants filed a motion in limine to exclude evidence of patches two through four.
 
 
 70
 This procedural history demonstrates that Gregory was not surprised at trial by the government's attempt to prove cultivation of all four marijuana patches. Accordingly, we find that the district court did not abuse its discretion by denying the requested bill of particulars.
 
 VI.
 
 71
 Gregory and Beckman raise several sentencing issues. First, they argue that the government violated the rule of Brady v. Maryland, 373 U.S. 83 (1963), by intentionally withholding exculpatory information concerning the quantity of marijuana in patch one. Next, they attack the district court's decision to add two-point enhancements to their base offense levels for obstruction of justice and carrying a firearm in the commission of an offense. We consider these arguments in turn.
 
 A.
 
 72
 Defendants first maintain that the government committed a Brady violation by withholding exculpatory information relating to the quantity of marijuana in patch one. Beckman and Gregory filed pretrial motions for discovery of favorable evidence relating to guilt or punishment. During discovery, the government provided the defendants with the video portion of a videotape showing officers destroying the marijuana patches. The defendants requested the audio portion of the tape, but the government declined, asserting that the audio portion was irrelevant.
 
 
 73
 The defendants then moved to compel the production of the audio portion of the tape. The district court denied the motion.
 
 
 74
 At the defendants' sentencing hearing, the government produced the audio portion of the tape. Detective Creech's voice is heard on the tape estimating the number of marijuana plants in patch one to be between 45 and 50. Earlier in the sentencing hearing, Detective Thomas McKnight testified that he counted 112 plants in patch one. After hearing the tape, the defendants inquired whether Creech was available to testify, and were told that he was not. The district court, finding that McKnight's count was more reliable than Creech's estimate, sentenced the defendants on the basis of 112 plants.[4]
 
 
 75
 There is no dispute that the defendants requested the audio portion of the videotape, that the government withheld it, and that Creech's statement on the tape is favorable to the defendants. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87 (emphasis added).
 
 
 76
 The government argues, however, that the suppressed tape is not material because the district court decided to rely on McKnight's count instead of Creech's estimate. We disagree. If the government had provided the audio portion of the tape to the defendants earlier, the defendants could have attempted to prove that Creech's estimate was more reliable than McKnight's count. At a minimum, they could have called Creech to explain how he arrived at an estimate so much lower than McKnight's count. Since Creech was not present at the sentencing hearing when the audio tape was played, the defendants did not have an opportunity to develop any such evidence.
 
 
 77
 Since we find that the government withheld material exculpatory information relating to the defendants' punishment, we must vacate defendants' sentences and remand for resentencing so that they may have an opportunity to develop the basis for Creech's plant estimate. The district court must then decide whether McKnight's count, Creech's estimate, or some other figure represents the number of plants "that is more likely than not in excess of the quantity for which the defendant is actually responsible." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 532 (1990).[5]
 
 B.
 
 78
 The defendants next attack the district court's decision to impose a two-level enhancement for possession of a dangerous weapon during a drug trafficking offense, pursuant to U.S.S.G. § 2D1.1(b)(1). We first address the enhancement as to Gregory. The court imposed this enhancement solely on the basis of the .38 caliber gun found at the bottom of Beckman's backpack, after finding that the .22 caliber gun in Gregory's backpack was not the type of weapon normally used by drug dealers.
 
 
 79
 Gregory raises two challenges to the application of this enhancement. First, he contends that the imposition of this enhancement violates the Fifth Amendment bar on double jeopardy because the jury acquitted the defendants of carrying firearms in relation to a drug trafficking crime. We rejected this precise argument in United States v. Williams, 894 F.2d 208, 211-12 (6th Cir.1990).
 
 
 80
 Second, Gregory argues that the district court abused its discretion in applying the enhancement to him on the basis of Beckman's gun. Gregory points out that the government introduced no evidence that Gregory "possessed" Beckman's gun or was aware that Beckman had a gun in the bottom of his backpack. Beckman testified that he always carried the gun, as well as numerous other personal items, in the backpack.
 
 
 81
 We find that the district court abused its discretion in applying the enhancement to Gregory. There was no evidence presented that supported a finding that Gregory actually or constructively "possessed" Beckman's gun.
 
 
 82
 Therefore, on remand the district court must resentence Gregory without applying the two-point firearms enhancement.
 
 
 83
 Beckman's argument revolves around his contention that although a weapon was found in his backpack there was no proof that it was in the backpack when he dropped off Gregory. The problem with this argument is that it erroneously rests upon the mistaken assumption that his participation was somehow limited to the precise moment in time when Gregory disembarked from the boat. Such is not the case. Making his boat available, coming to the lake with Gregory, furnishing wire for the marijuana plots, and picking up Gregory after he fled from the agents are all examples of acts which the district court, by a preponderance of the evidence, properly could have attributed to Beckman. We conclude there was adequate evidence in the record to support the enhancement as to Beckman.
 
 C.
 
 84
 Defendants challenge the district court's decision to apply a two-point enhancement for obstruction of justice, pursuant to U.S.S.G. § 3C1.1. Defendants maintain that the district court erroneously thought itself bound by the jury's verdict to conclude that the defendants testified untruthfully at trial.[6]
 
 
 85
 Although the court's statements and questions could be read to state a belief that the jury's verdict bound the court to impose the enhancement, the court later made specific findings that it believed defendants' testimony to be untruthful. Once the court made those findings, the application of the enhancement was required. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 2246 (1991). We therefore affirm the court's decision to apply the two-point obstruction enhancement.
 
 D.
 
 86
 Defendants raise two more objections to the sentencing. First, they argue that the treatment of one marijuana plant as equivalent to one kilogram for sentencing purposes violates their due process rights. We recently rejected that argument. United States v. Holmes, 961 F.2d 599, 601-03 (6th Cir.), cert. denied, --- U.S. ----, --- S.Ct. ----, 1992 WL 171350 (Oct. 5, 1992).
 
 
 87
 Second, defendants argue that the district court violated their due process rights by applying an enhancement for the quantity of marijuana, pursuant to 21 U.S.C. § 841(b)(1)(B)(vii), when the indictment did not specify the quantity of marijuana involved. We rejected that argument in United States v. Hodges, 935 F.2d 766, 770 (6th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 251 (1991), in which we held that the quantity of drugs involved was a sentencing question, not a jury issue. But see United States v. Rigsby, 943 F.2d 631, 639-43 (6th Cir.1991) (disagreeing with, but applying, the rule articulated in Hodges), cert. denied, --- U.S. ----, 112 S.Ct. 1269 (1992).[7]
 
 VII.
 
 88
 In summary, we AFFIRM Beckman's convictions, AFFIRM Gregory's convictions, VACATE Gregory's and Beckman's sentences, and REMAND so that the district court may resentence the defendants consistent with this opinion.
 
 
 89
 ANTHONY J. CELEBREZZE, Senior Circuit Judge, dissenting.
 
 
 90
 I dissent from the majority's determination of the gun enhancement issue which, I believe, created an injustice. By imposing a U.S.S.G. § 2D1.1(b)(1) enhancement on only defendant Beckman, the majority, in essence, punishes defendant Beckman more severely than defendant Gregory. I find this harsher treatment of Beckman, who operated the boat that carried Gregory to the marijuana field, inequitable in light of the greater culpability of Gregory, who actually tended the marijuana field. In our zealous pursuit of scholarship, we cannot lose sight of our responsibility to effect equal justice for all people under the law.
 
 
 91
 U.S.S.G. § 2D1.1(b)(1) mandates a sentence enhancement of two levels where the defendant possessed a dangerous weapon/firearm during a drug trafficking offense. The district court imposed the sentencing enhancement on Gregory and Beckman based on the existence of a .38 caliber gun in Beckman's backpack. The district court declined to impose the enhancement on Gregory for the gun in his own backpack, finding that a .22 caliber gun was "... not the kind of pistol normally used by dope dealers and dope growers." Joint Appendix p. 664. The court conceded, however, that "... that kind of pistol certainly could be used and it would have--as any other firearm." Joint Appendix p. 664.
 
 
 92
 Our review of an issue of federal guidelines sentencing obliges us to review the district court's factual findings for clear error, and to review de novo the district court's legal conclusions with deference to the district court's application of the law to the facts. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). This, it should be noted, controverts the majority's use of an abuse of discretion standard in its review.
 
 
 93
 In applying the appropriate standard of review to this issue, I would find the district court clearly erred by imposing the sentencing enhancement to Gregory on the basis of Beckman's gun. I would further conclude, however, that the district court compounded its clear error by improperly determining that Gregory's .22 caliber pistol should not be used for sentencing purposes because it is not the weapon of choice for drug dealers.
 
 
 94
 The commentary to U.S.S.G. § 2D1.1(b)(1) provides that the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." United States v. Garner, 940 F.2d at 174-175; United States v. Miller, 910 F.2d 1321, 1328 (6th Cir.1990), cert. denied, 111 S.Ct. 980. There is nothing improbable about the use of a .22 caliber pistol in the context of a drug crime, as is evidenced by the volume of cases in which such a weapon has sustained U.S.S.G. § 2D1.1(b)(1) enhancements. See United States v. Castillo, --- F.2d ---- (1st Cir.1992); United States v. Nelson, 960 F.2d 1301, 1310 (5th Cir.1992); United States v. Romulus, 949 F.2d 713, 716-717 (4th Cir.1991), cert. denied, 1125 S.Ct. 1690; United States v. Duke, 935 F.2d 161, 162 (8th Cir.1991); United States v. Paulk, 917 F.2d 879, 880-882 (5th Cir.1990); United States v. Heldberg, 907 F.2d 91, 94 (9th Cir.1990); United States v. Green, 889 F.2d 187, 189 (8th Cir.1989).
 
 
 95
 A reviewing court may affirm a determination for reasons other than those stated by the district court where the district court reached the right conclusion for the wrong reasons. Rosen v. Brown, 970 F.2d 169, 178 (6th Cir.1992); Fryman v. Federal Crop Ins. Corp., 936 F.2d 244, 250 (6th Cir.1991). Thus, I would affirm the sentencing enhancement as to Gregory for the reasons herein described.
 
 
 
 [1]
 Dolan's testimony on this point is somewhat ambiguous. When asked whether he would have stopped the defendants if they had attempted to leave, he responded, "I never thought of that." (App. 238)
 
 
 [2]
 Dolan apparently did hold on to their fishing licenses for identification purposes, however
 
 
 [3]
 The government maintains that the defendants did not preserve their objections to the admission of these items. The defendants objected to all of this evidence in a motion in limine. At trial, the defendants placed continuing objections, based on their earlier motion in limine, on the record. Although these latter objections were sometimes not specific, we find that the defendants sufficiently preserved their objections for appeal
 
 
 [4]
 The decision to credit McKnight's count over Creech's estimate had a large effect on the sentences. For offenses involving more than 100 plants, each plant is treated as equivalent to 1 kilogram of marijuana. U.S.S.G. § 2D1.1(c). Thus, 112 plants is treated as 112 kilograms, resulting in a base offense level of 26. On the other hand, for an offense involving 50 or fewer plants, each plant is treated as equivalent to 100 grams. Id. Thus, 45 to 50 plants is treated as equivalent to 4.5 to 5 kilograms, resulting in a base offense level of 12. Adding the other enhancements applied by the district court, 112 plants translated to a 97 to 121 month sentence while 45 to 50 plants translated to a 21 to 27 month range
 
 
 [5]
 Gregory also argues that Creech's estimate goes to the issue of his guilt or innocence. We disagree. The number of plants in patch one is not material to any of the elements in the offenses for which Gregory was convicted
 
 
 [6]
 Gregory's argument is based on a question the court asked during the sentencing hearing: "Now, if I make a determination that's contrary to what the jury has found, then I need to set aside--I may have waited too late, but I would need to set aside the verdict of the jury, wouldn't I?" (App.674)
 
 
 [7]
 We observe that the government provided Gregory with notice of the potential quantity enhancement in a penalty page attached to the indictment